[Cite as *State v. Sillman*, 2024-Ohio-3363.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 23CA4038 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Brandon J. Sillman, | : | **RELEASED 8/28/2024** |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES</u>:

Kyle J. Lennen, Lennen Law LLC, Dayton, Ohio, for appellant.

Shane A. Tieman, Prosecuting Attorney, and Jay Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____

Hess, J.

**{¶1}** Brandon J. Sillman appeals from a judgment of the Scioto County Court of Common Pleas convicting him, following guilty pleas, of trafficking in a fentanyl-related compound, tampering with evidence, and possessing criminal tools. Sillman presents five assignments of error asserting that (1) his pleas were not voluntarily entered, (2) his pleas were not voluntary due to the trial court's involvement in them, (3) the trial court abused its discretion when it denied his request to continue sentencing, (4) trial counsel was ineffective for allowing false information into plea negotiations, and (5) trial counsel was ineffective for failing to file a motion to withdraw the guilty pleas. For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} On April 26, 2022, Sillman was indicted on five counts: (1) Count One, trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2) and (C)(9)(h), a first-degree felony, with a major drug offender specification and a forfeiture specification for $2,235; (2) Count Two, possession of a fentanyl-related compound in violation of R.C. 2925.11(A) and (C)(11)(g), a first-degree felony, with a major drug offender specification and a forfeiture specification for $2,235; (3) Count Three, tampering with evidence in violation of R.C. 2921.12(A)(1) and (B), a third-degree felony; (4) Count Four, aggravated possession of drugs (fentanyl) in violation of R.C. 2925.11(A) and (C)(1)(a), a fifth-degree felony; and (5) Count Five, possessing criminal tools in violation of R.C. 2923.24(A) and (C), a fifth-degree felony. On October 5, 2022, Sillman was arrested. He was arraigned the next day and pleaded not guilty to the charges. The matter was set for final pretrial on February 24, 2023, and jury trial on March 20, 2023. However, on March 10, 2023, notices of hearing dated February 24, 2023, were filed indicating the matter was set for a suppression hearing and final pretrial on April 14, 2023, and a jury trial on April 24, 2023. On March 20, 2023, Sillman filed a motion to suppress.

{¶3} At the April 14, 2023 hearing, the court noted there had been "a lot of discussions" and asked if an offer had been made that day. The assistant prosecutor stated:

> There was, Your Honor. I explained to the Defense Counsel that at this point we are ten days from trial and things that I reviewed on the cruiser cam concerned me. The fact that this Defendant has, I believe, what to be [sic] four prior felonies concerns us. And based on that and some other things, the offer was actually ten mandatory with four nonmandatory, for a total of 14, which is the mandatory - - 14 mandatory - - all mandatory is the mandatory minimum on this case with the MDO specification if he's convicted of just the F1 fentanyl with the MDO specification.

The assistant prosecutor stated that defense counsel asked if she was "willing to come down to nine mandatory with four nonmandatory," and she agreed to do so if Sillman "was willing to enter a plea before we started the suppression hearing." She stated, "Judge, it's our practice, especially with this close to trial, that we won't be making an offer once this hearing starts if the Defendant chooses to decline the offer as it stands - - offer and counteroffer as it stands today."

{¶4} The court asked Sillman if he had questions about the offer. Sillman stated, "I basically was like - -today I was under the impression I was just coming for a motion hearing." The court stated, "Motion hearing and final pretrial. But the - - the final pretrial means we're ten days from trial and the Prosecutors [sic] starting to prepare for trial in this matter." Sillman stated:

> Yeah. But I was asking, like, can I get some time to think. Like, this is a major decision. I didn't know like it was going to be this fast where I just - - I - - this is my - - like they offer me a plea and when I first had a court appointment, but she never really said nothing to me. I was under the impression with him that I was going for a motion hearing. I didn't know that either I got to take this plea or either take the chance of going to trial. I was just asking, like can I get some time to think about what I'm going to do. Like, this is a major decision. I got a family. Every - -

The court stated, "This case has been pending a long time. It's been pending since last October." After further discussion, Sillman stated, "So, I just was just asking like can I get like a week or something to decide on - -on this plea, like if I'm going to take this plea or - -or if I want to go to trial." The court stated: "Well a weeks [sic] going to put us until next Friday. That's not enough time to do that. That's why we're here today. And - - and you're right, we are here for a motion hearing today, but I wanted to address this issue with you before the Prosecutor withdrew their offer, because I want to make sure you

understand the offer." The court told Sillman, "I want to make sure you understand the max - -potential maximum penalty. At this point, I don't know if you - - you'll be found guilty or not guilty of these charges. That will be the jury's decision if we have a trial. But I want you to make these decisions with - -with open eyes as to what your options are, but this case has been pending sixth months." The court stated, "It's - -it's the time where you got to make those decisions."

{¶5} Sillman told the court:

> I understand that like, but like - -like I just - -to me like, man, I ain't no [sic] I have to make the decision like this. They gave me 20 minutes to - -to make this decision. This is a lifechanging decision. I understand what - -I understand everything. I don't have - - even when she said I got four felonies, I got three felonies. I don't even - - I don't have four felonies. I only have three felonies. And I understand like the surroundings. I understanding [sic] that I'm holding these up, but like, I just need a little time to make sure. I'm not trying to go to trial and loose [sic] and get 26 year [sic]. At least, can I go and talk to my dad and my grandparents?

The court told Sillman it would let him make a phone call but noted, "[W]e're here to start this hearing and it's - -well, we're already 45 minutes late for [sic]. Now, part of that was on me because I was doing some other stuff back there and I was letting the lawyers talk, but - -but it's time to start that hearing." The court also told Sillman it wanted to talk to him about "the maximum penalty" before he made his phone call.

{¶6} After explaining the maximum penalty for each count, the court asked whether Sillman had any questions "about the State's offer or the maximum penalty as it relates to these charges." Sillman said, "Like, even like with the plea, I was - -I was wondering - -I can't get like seven years or nothing like - - like - -." The assistant prosecutor stated, "Seven years is not an offer that would be considered by the State." The court stated, "That's not what they're offering." Sillman said, "Yeah. So, basically I got to take

nine years or go to trial?" The court said, "Nine, plus the nonmandatory portion. So I think the offer is 13 to 17 and a half, 13 being - -nine of it being mandatory, and four being nonmandatory." The assistant prosecutor stated, "Well, our offer was actually ten mandatory, four nonmandatory, for a total of 14 years, and there would be an indefinite term by law that applies to that. I was asked if I could go back to the nine years mandatory. And so, we ended up at nine and four, for 13 total, plus whatever the indefinite is required by law." The court said, "Mr. Sillman * * * you've heard what the Prosecutor said, that's not their offer in this case, and I'm not - -I - -I'm not allowed to plea bargain. That's not my role in this. If you want to negotiate, you have to negotiate through your lawyer * * *."

{¶7}   Sillman later asked, "So - - so basically, the plea is nine years mandatory?" The court said, "Um hmm. Four - - and four non - - nonmandatory, plus the tail." Sillman said, "So, if I mess up you saying - - so basically, I - -I - -can you explain it to me?" Defense counsel said, "Yeah. He'll explain it to you now." The court stated:

> Yeah. You could have [defense counsel] explain it to you, or I'll be happy to. I don't want to - -I - -my job isn't to give you advice. That's why you hired [defense counsel]. You hired a - -a good trial lawyer for this case, so he ought to be the one giving you advice on what to do. But if you got questions for me about the penalty or the maximum penalty, I'm happy to answer that, but - -."

There were additional discussions, which included the following statement by defense counsel: "So, the other four years that he's talking about is if you get in trouble (inaudible) - -." Sillman asked if he could "make a call real quick." The court indicated he could and stated, "We'll take a short recess, but we - -make it pretty quick, because we need to - - do have to get started." When the matter resumed, the court stated, "Mr. Sillman, do you need anymore [sic] time to discuss this with [defense counsel]?" Sillman stated, "No sir."

The court stated, "And what is your decision today?" Sillman said, "I'm going to take it."

The court stated, "Let's take a short recess and do some paperwork."

{¶8}    When the matter resumed, the court noted that Sillman "indicated previously that he wished to accept the plea offer in this matter." The court told Sillman, "if we proceed in this fashion, you'd be entering pleas of guilty to three charges"—Count One, which would be amended, Count Three, and Count Five. Sillman told the court he understood the charges to which he'd be pleading guilty. Sillman also confirmed he would be waiving any right, title, or interest in the U.S. currency addressed in the indictment. The court told Sillman:  "Now sir, if we proceed in this fashion that by entering a plea of guilty you understand that would then allow me to proceed with sentencing, although it would be my intention to come back for sentencing sometime in the month of May?  Next month."  Sillman said, "Yes, sir."  The court said, "I - -I let your lawyers talk me into that. That's probably beyond what I ought to do, but I told them I would do that in this case to give you some time to make some arrangements.  Do you understand?" Sillman said, "Yes, sir."

{¶9}    The court also told Sillman:

Now, the lawyers have indicated this is what's known as a jointly recommended or agreed sentence, which means when we come back for sentencing you and your lawyer would be recommending a 13 year definite term, nine of which would be mandatory, up to an indefinite term of up to 17 and a half years, and the Prosecutor would be making that same recommendation.  Do you understand that by proceeding with sentencing in that fashion that you'd be waiving your right to appeal the sentence that I give you?

Sillman said, "Yes, sir." The court then stated:

All right.  The other part of that is, I'm not going to do sentencing today.  So, we're going to come back for sentencing at a later time.  Do you understand that I'm not bound by that joint recommendation?  In particular, if I find out

you had violated your bond between now and then, you didn't come back
to court, of if [sic] you got in more trouble between now and then, do you
understand I'm not bound by this joint recommendation?

Sillman said, "Yes, sir." The court asked, "Is this what you want to do?" Sillman said, "Yes,

sir."

{¶10} The court then addressed paperwork Sillman had completed, which

included documents regarding the maximum penalties, a waiver of constitutional rights,

and an indefinite sentencing advisory. The court made additional inquiries of Sillman

before explaining and confirming he understood the constitutional rights he was waiving

by pleading guilty. The court addressed the maximum penalties for the offenses Sillman

would be pleading guilty to under the plea offer. Sillman indicated he understood the

maximum penalties. The court asked if Sillman understood that he would receive "both

a definite term and an indefinite term" for the trafficking charge. Sillman said, "Yes, Your

Honor." The court said, "That's what we talked about earlier, is that tail sentence."

Sillman said, "So basically, if I do nine years and don't get in trouble I - - I can get out, but

if I get in trouble it - -it go - -." The court said, "You - -at nine years you can ask for a

judicial release. But what we're talking about here is that indefinite portion of that

sentence." Sillman said, "Yes." The court said: "Where if you serve the entirety of the

13 years, if you got in trouble while you're in prison the Department of Corrections could

keep you into that indefinite portion, depending on any trouble you get into while you're

in prison." The following exchange occurred:

DEFENDANT: Are you saying the indefinite is the whole 35 years?

[DEFENSE COUNSEL]: No. That's the - -no it's 13.

DEFENDANT: Or the 13?

MR. BANKS:  Yeah.

DEFENDANT:  All right.

THE COURT:  Right.  Just if you did the whole 13, then they could keep you into that indefinite term.  Do you understand that?  If you got in trouble while you're in prison.

DEFENDANT:  Yeah.

The court addressed the indefinite sentencing advisory and said, "[T]hat's the circumstances in which the Department of Corrections could keep you past the definite term and into the indefinite portion of this sentence.  Do you understand that?"  Sillman stated, "Yes, Your Honor."  The court asked, "Do you feel like you understand the circumstances where that could happen?"  Sillman said, "Yes, sir."  The court explained how the "indefinite portion" of the trafficking sentence was calculated and that it would be 4.5 years under the plea agreement.  The court said, "Do you understand all that?  It's complicated.  If you have questions, feel free to ask."  Sillman stated, "I understand."

{¶11}  The court later asked whether Sillman had "any questions" for the court "about anything we've gone over here today."  Sillman said, "No, sir."  The court stated, "Having gone over these items, do you still wish your signature to remain on these documents?"  Sillman stated, "Yes, sir."  The court stated, "Other than what we've discussed here on the record, has anyone promised you anything, or threatened you, or otherwise caused you or induced you to come in here and change your plea from not guilty to guilty on these charges?"  Sillman stated, "No, sir."  The court asked, "Are you doing this of your own free will?"  Sillman stated, "Yes, sir."

{¶12}  Sillman entered guilty pleas to Count One, amended to a violation of R.C. 2925.03(A)(2) and (C)(9)(g), Count Three, and Count Five.  The court found the pleas

were knowing, intelligent, and voluntary. The court accepted the guilty pleas and found Sillman guilty of the offenses to which he had pleaded guilty.

{¶13} The matter was set for sentencing on May 25, 2023. On May 22, 2023, the State moved to continue the sentencing hearing because the assistant prosecutor assigned to the case was going to be out of the office. The trial court granted the motion and rescheduled the sentencing hearing for May 31, 2023.

{¶14} At the beginning of the sentencing hearing, the court noted that new counsel for Sillman had "entered his appearance orally here today." The court asked if the parties were ready to proceed with sentencing. The State indicated it was, but Sillman's new counsel stated:

> If I may, Your Honor. No, we are not prepared to proceed. I've had some discussions with Mr. Stillman, as well as his family. It seemed that there was some confusion about what the plea deal is, especially in regard to the mandatory time. I would just like to make a record that I've asked to continue this hearing, just so I could have the opportunity to go over the case with Mr. Stillman to ensure that this is the right plea agreement for him. We have discussed a lot about the - -the case, whether or not he should proceed, whether he should ask to withdraw his plea. I'm not in a position to tell him one way or another, and - -which is why I'm here asking that this case be continued, even if not just for a brief amount of time so I can ensure for Mr. Sillman that he has a real understanding of what he was doing at the time he pled and what his plea agreement is."

The court stated:

> I took this plea some time ago. I believe it was back in April. I had set it for sentencing last week. I think [the assistant prosecutor] was out of town. I continued that sentencing until today. I - -I think I'd said back in April that I would not do the sentencing then, but I would - -did want this matter resolved before the end of May. So, I put it on today, the last day of May. At this time, I'm going to deny the motion to continue. I'm going to proceed with sentence.

**{¶15}** The court proceeded to sentencing and imposed the jointly recommended sentence. On amended Count One, the court sentenced Sillman to 9 to 13.5 years in prison, 9 of which were mandatory. On Count Three, the court sentenced him to 36 months. On Count Five, the court sentenced him to 12 months. The court ordered that he serve the sentences consecutively, for an aggregate sentence of 13 to 17.5 years, 9 of which were mandatory. The court dismissed the remaining counts of the indictment.

**{¶16}** On June 1, 2023, counsel who represented Sillman at the April 14, 2023 hearing filed a motion to withdraw as counsel. The motion states that counsel is "confirming" the "oral motion made before sentencing on May 31, 2023," and that Sillman's new counsel "appeared on behalf of Defendant and indicated that he had been retained for the case." The trial court granted the motion. After the court issued its sentencing entry, this appeal followed.

## II. ASSIGNMENTS OF ERROR

**{¶17}** Sillman presents five assignments of error:

Assignment of Error I: Defendant's plea was not voluntarily entered.

Assignment of Error II: Defendant's plea was not voluntary due trial court's involvement in the plea [sic].

Assignment of Error III: The trial court abused its discretion when it denied defendant's request to continue sentencing.

Assignment of Error IV: Counsel was ineffective for allowing false information into plea negotiations.

Assignment of Error V: Counsel was ineffective for failing to file a motion to withdraw defendant's plea.

### III. VOLUNTARINESS OF GUILTY PLEAS

{¶18} In the first assignment of error, Sillman contends his guilty pleas were not voluntarily entered. Sillman claims he was "force[d] to make a quick decision, based upon false information with a lack of understanding to what he was pleading to." Sillman claims his comments at the April 14, 2023 hearing indicate that he thought he was coming to court for a suppression hearing and was instead "ambushed with the plea decision." He asserts that "[n]o reasonable individual could be determined to make a knowing[ ] and intelligent decision in 20 minutes regarding the next several decades of their life." He claims "[b]eing forced into making a quick decision is a coercion tactic and removes the voluntariness of [his] decision."

{¶19} Sillman also maintains that the "plea offer was based upon false information" from the prosecution about the number of prior felonies he had, so he "was not able to give an intelligent consideration to the offer." He asserts that the State indicated that "a portion" of its offer was based on him having four prior felonies when he only had three. Sillman asserts that defense counsel "did not object to" the State's assertion, and he had to supply "correct information" himself.

{¶20} Sillman also maintains that "[t]hroughout the colloquy * * * he continued to express a lack of understanding to what the plea offer was." Sillman asserts that "[h]e stated at multiple times that he believed the plea offer was to plea[d] guilty and be sentenced to nine years in prison." Sillman claims his lack of understanding was further reflected in defense counsel's statement at sentencing that "[i]t seemed that there was some confusion about what the plea deal is, especially in regard to the mandatory time."

He asserts that the "repeated lack of understanding" he expressed "shows that he did not enter into a knowing plea."

{¶21} In the second assignment of error, Sillman contends his guilty pleas were not voluntary due to the trial court's "involvement in the plea." Sillman asserts that at the April 14, 2023 hearing, he "immediately expressed his concern that he was at court that day only for a motion to suppress hearing" and "expressed his concern for being forced to immediately make a decision on the offer to the substantial prison time and the fact that he has a family." He asserts that he "made multiple requests himself to get a short period of time to consider this offer," but the court "immediately denied" them. Sillman claims he then "begged the Court for additional time given the gravity of the case." He asserts that even though the court allowed him to make a phone call, the court "reiterated that they would be starting the hearing." Sillman asserts that before letting him make the call, the court "repeatedly addressed the maximum possible punishment compared to the current plea offer" and "never addressed the plea offer compared to an acquittal." Sillman maintains that when he "inquired about a different plea offer," the State rejected it, and the court "reiterated that to [him]." He asserts that the State's offer "was made to expire upon the start of the hearing that Mr. Sillman was there for on April 14, 2023," and that "the Court was not willing to allow [him] sufficient time to consider that offer and was going to make [the] hearing go forward, therefore terminating the offer." He claims the court put "[a]dditional timing pressure" on him "by only giving him a short time to use his phone prior to the start of" the suppression hearing. Sillman contends "[a]ny reasonable individual in [his] position would have felt no choice but to enter into this plea due to the

nature of the Court's conversation with him." He claims his "back was against the wall due to the Court's participation in this plea."

## A.　Legal Principles

**{¶22}** "Because a * * * guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 2020-Ohio-2765, ¶ 10. "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id.* "An appellate court determining whether a guilty plea was entered knowingly, intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards." *State v. Moore*, 2014-Ohio-3024, ¶ 13 (4th Dist.).

**{¶23}** "Ohio's Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas." *Dangler* at ¶ 11. "[T]he rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his [or her] rights and the consequences of his [or her] plea and determine if the plea is understandingly and voluntarily made.' " *Id.*, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). Our focus on review is not on whether the trial court recited the exact language of Crim.R. 11, but "on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences" of the plea. *Id.* at ¶ 12.

**{¶24}** Crim.R. 11(C)(2) states:

In felony cases the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally * * * and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty

involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶25} "When a criminal defendant seeks to have [a] conviction reversed on appeal, the traditional rule is that [the defendant] must establish that an error occurred in the trial-court proceedings and that [the defendant] was prejudiced by that error." *Dangler*, 2020-Ohio-2765, at ¶ 13. However, there are exceptions to the prejudice component of the rule in the criminal-plea context. *Id.* at ¶ 14-15. When a trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest, "we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.* at ¶ 14. In addition, "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis in original.) *Id.* at ¶ 15. "If neither of these two exceptions apply, then the defendant is not entitled to have the plea vacated without demonstrating prejudice." *State v. Pierce*, 2024-Ohio-82, ¶ 13 (4th Dist.). "The test for prejudice is 'whether the plea would have otherwise been made.' " *Dangler* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶26} " 'Although strongly discouraged by the Ohio Supreme Court, a trial judge's participation in plea negotiations does not render a defendant's plea invalid per se under

the Ohio and United States Constitutions.' " *State v. Davis*, 2014-Ohio-5371, ¶ 33 (4th Dist.), quoting *State v. Jabbaar*, 2013-Ohio-1655, ¶ 26 (8th Dist.) (lead opinion), citing *State v. Byrd*, 63 Ohio St.2d 288, 293-294 (1980). Instead, "a trial judge's participation in the plea bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's guilty plea." *Byrd* at 293. "Generally, a plea is involuntary and unconstitutional 'if the judge's active conduct could lead a defendant to believe [the defendant] cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against [the defendant] at trial.' " *State v. McIntosh*, 2018-Ohio-51, ¶ 31 (4th Dist.), quoting *Byrd* at 293-294. "We consider the record in its entirety to determine the voluntariness of the plea." *State v. Bodine*, 2023-Ohio-2197, ¶ 8 (3d Dist.), citing *State v. Lawson*, 2018-Ohio-4922, ¶ 20 (3d Dist.), citing *Jabbaar* at ¶ 29 (lead opinion).

### B. Analysis

**{¶27}** Although the first and second assignments of error focus on the voluntariness of Sillman's guilty pleas, some of Sillman's arguments also touch on whether the pleas were knowing and intelligent. After considering the totality of the circumstances, we cannot conclude that Sillman's guilty pleas were not knowing, intelligent, or voluntary. Sillman does not contend that the trial court failed to comply with a specific provision of Crim.R. 11(C)(2). Moreover, our review reveals that the court engaged in an extensive dialogue with Sillman to ensure that he understood the ramifications of his guilty pleas.

**{¶28}** The assertion that the guilty pleas were invalid due to "false information" from the State about Sillman's criminal history is meritless. At the beginning of the April

14, 2023 hearing, the State indicated its original plea offer was partially based on Sillman having four prior felonies. Even if Sillman only had three prior felonies, he was aware of that fact before he entered his guilty pleas as evidenced by his statements to the trial court. Therefore, we fail to see how "false information" from the State prevented him from giving "intelligent consideration to the offer."

{¶29} Sillman's assertion that his guilty pleas were involuntary because he did not understand the jointly recommended sentence is also not well-taken. At the beginning of the April 14, 2023 hearing, Sillman indicated he did not fully understand the recommended sentence when he stated, " So, basically I got to take nine years or go to trial?" The court corrected him and explained the joint recommendation would be 13 to 17.5 years in prison, and of the 13 years, 9 was mandatory, and 4 was nonmandatory. Later, Sillman stated, "So - -so basically, the plea is nine years mandatory." The court again corrected him, explaining there would also be four years of nonmandatory time "plus the tail." Sillman asked for further explanation. The court did not provide it at that time but noted that defense counsel could explain it to Sillman. Defense counsel began to offer an explanation, but the full extent of it is unknown as the transcript indicates it became inaudible.

{¶30} After the first recess, Sillman told the court he did not need more time to consult with defense counsel, and after the second recess, when the court recited the jointly recommended sentence, Sillman gave no indication that he did not understand. Later during the hearing, Sillman indicated he understood nine years of the jointly recommended sentence was mandatory, stating, "So basically, if I do nine years and don't get in trouble I - - I can get out, but if I get in trouble it - -it go - -." The court stated that

"at nine years you can ask for a judicial release," and after 13 years, the Department of Corrections could keep Sillman in prison for the "indefinite portion" of the sentence "depending on any trouble [he] got into" in prison. Sillman expressed confusion about what the court meant by the "indefinite portion" of the sentence, and the court offered further clarification. The court then said, "Do you understand all that? It's complicated. If you have questions, feel free to ask." Sillman stated, "I understand." Thus, the transcript from the April 14, 2023 hearing indicates that despite his earlier confusion, Sillman understood the jointly recommended sentence before he entered his guilty pleas.

**{¶31}** Sillman's assertion that his guilty pleas were involuntary because he was forced to make a quick decision is also not well-taken. There is no set amount of time a defendant must spend contemplating a plea offer to enter a valid guilty plea. "[F]acing time pressure" to respond to a plea offer " 'is common among criminal defendants, and hardly exceptional enough to evince an overbearing of [a defendant's] will.' " *United States v. Bruzón-Velázquez*, 49 F.4th 23, 30 (1st Cir. 2022), quoting *United States v. Marrero-Rivera*, 124 F.3d 342, 350 (1st Cir. 1997).

**{¶32}** Near the beginning of the April 14, 2023 hearing, Sillman did tell the trial court "[t]hey gave me 20 minutes to - -to make this decision," and indicated he needed more time. Sillman did get some additional time to make a decision, though the precise amount is unknown. The court explained the maximum penalty for each count to aid Sillman in making an informed decision about the plea offer. The court also took a short recess to give Sillman a chance to consult with his family. After that recess, the court asked if Sillman needed more time to consult with defense counsel, and he said, "No, sir," and told the court he was "going to take" the plea offer. Additional time elapsed before

Sillman actually entered the guilty pleas. The court took a second recess for Sillman to complete paperwork, and after the recess, the court engaged in a lengthy colloquy with Sillman. Near the end of the colloquy, Sillman confirmed he wanted his signature to remain on the plea-related documents he executed. Sillman confirmed that aside from what had been discussed on the record, no one promised him anything, threatened him, or otherwise caused or induced him to change his pleas to guilty. When asked whether he was acting of his "own free will," Sillman stated, "Yes, sir." These facts contradict the assertion that Sillman's pleas were involuntary because he was forced to make a quick decision.

{¶33} Sillman's assertion that his pleas were involuntary because of the trial court's involvement is also not well-taken. The trial court did not put any "timing pressure" on Sillman. The State set the deadline for acceptance of the plea offer, not the trial court. The trial court had no obligation to delay the suppression hearing another week as Sillman requested—to just days before the scheduled jury trial—to effectively extend that deadline. And if anything, the court relieved some of the "timing pressure" on Sillman and tried to help him make an informed decision about the plea offer. The court made it clear that the court did not know whether Sillman would be found guilty or not guilty of the charged offenses and that it would be "the jury's decision if we have a trial." The court explained the maximum penalties Sillman faced if the jury found him guilty. The court gave Sillman an opportunity to consult with his family, and afterwards, inquired about whether he needed more time to consult with defense counsel. Sillman indicated he did not and that he wanted to take the plea offer. The court then engaged in a lengthy colloquy with Sillman. Nothing in the trial court's conduct, including its reiteration of the

fact that the State would not agree to a seven-year sentence, could have reasonably led Sillman to believe that he could not get a fair trial because the judge thought a trial was a futile exercise or that the judge would be biased against him at trial.

**{¶34}** For the foregoing reasons, we conclude Sillman's guilty pleas were knowing, intelligent, and voluntary, and overrule the first and second assignments of error.

## IV. DENIAL OF CONTINUANCE

**{¶35}** In the third assignment of error, Sillman contends the trial court abused its discretion when it denied his request to continue sentencing. Sillman maintains that "[d]efense counsel made it clear that he was requesting a continuance 'for a brief amount of time.' " Sillman asserts that he made no prior requests for a continuance, and the State previously requested and received a continuance of the sentencing hearing. He maintains that "[d]efense counsel made it clear that there was not an understanding by Defendant as to what the plea was," and addressed withdrawal of the plea. Sillman asserts that determining whether he "properly understood his plea and whether a motion to withdraw needed to be pursued" are "legitimate reasons for a short continuance." Sillman asserts that "[t]he legal standard to withdraw a plea is significantly higher when it is requested after sentencing," so by denying a continuance, the trial court "forced a much higher burden" on him. Sillman also asserts that the State did not object to his request for a continuance and that "there was no indication that inconvenience would fall upon any of the parties if a continuance were granted." He asserts that even though the trial court indicated it wanted the matter resolved before the end of May 2023, the court "gave no basis for the deadline."

**{¶36}** "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). An abuse of discretion is "an unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 2008-Ohio-4493, ¶ 23.

**{¶37}** " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *Unger* at 67, quoting *Ungar* at 589. "Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.* The Supreme Court of Ohio has stated:

> In evaluating a motion for a continuance, a court should note, inter alia : the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68.

**{¶38}** The decision to deny Sillman's motion for a continuance was not unreasonable, arbitrary, or unconscionable. The record does not contain any prior defense motions for a continuance. However, the record suggests the trial court may have continued the original trial date so the defense could pursue a motion to suppress.

In addition, at the April 14, 2023 hearing, the court indicated it was delaying sentencing on the defense's request to give Sillman "time to make some arrangements." At the time Sillman requested the sentencing continuance, the case was over a year old, and the court had already continued sentencing once on the State's motion. Although the State did not object to the motion for continuance, the trial court did not give the State an opportunity to do so before it denied the motion. A continuance would have presumably inconvenienced the State and the court as they were prepared to proceed. Defense counsel offered a legitimate reason for the requested continuance—determining whether Sillman understood the plea agreement and should move to withdraw his guilty pleas. But the record suggests Sillman contributed to the circumstance which gave rise to the request for a continuance. Sillman had over 45 days to consult with counsel and decide whether to file a motion to withdraw his guilty pleas before the sentencing hearing. Instead of filing a motion during that time, for unknown reasons, it appears he waited until shortly before the sentencing hearing to retain new counsel and seek advice regarding his guilty pleas. Under these circumstances, we conclude that the trial court did not abuse its discretion when it denied Sillman's continuance request, and we overrule the third assignment of error.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

**{¶39}** In the fourth assignment of error, Sillman contends trial counsel "was ineffective for allowing false information into plea negotiations." Sillman maintains that "[t]he prosecution stated that a portion of their offer was based upon the fact that [he] had four prior felonies." He asserts that trial counsel "did not object to this assertion" and that he had to provide "correct information" himself. He suggests that counsel's failure to

correct the prosecution during plea negotiations precluded his guilty pleas from being knowing, intelligent, and voluntary.

**{¶40}** In the fifth assignment of error, Sillman contends trial counsel was ineffective for failing to file a motion to withdraw his guilty pleas. Sillman asserts that trial counsel's statements at the sentencing hearing made it "clear" that he "did not fully understand the plea agreement." Sillman also asserts that counsel "referenced the potential for a withdrawal of plea that he had not fully advised Mr. Sillman on." Sillman maintains that his "lack of understanding of the plea agreement is on the record," that "[c]ounsel's failure to properly advise him is on the record," and that "[t]he request to withdraw Defendant's plea should have been properly vetted by counsel and a motion filed prior to sentencing." Sillman asserts that "[i]f [he] did not understand his plea agreement, this would create a high probability that the motion would be successful." And he claims that by not filing a presentence motion to withdraw the guilty pleas, trial counsel "has forced a higher burden" on him.

### A. Standard of Review

**{¶41}** "Upon direct appeal, appellate courts generally review claims of ineffective assistance of counsel on a de novo basis, simply because the issue originates at the appellate level; no trial court has ruled on the issue. Appellate courts review the trial record and are left to judge from the bare record whether the assistance was effective." *State v. Gondor*, 2006-Ohio-6679, ¶ 53. "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), and

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *Gondor* at ¶ 62. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 2006-Ohio-2815, ¶ 95, citing *Strickland* at 687, and *Bradley* at 143. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. Failure to satisfy either part of the ineffective-assistance-of-counsel test is fatal to the claim. *See id.* at 697.

### B. Plea Negotiations

**{¶42}** Sillman has not met his burden to show trial counsel was ineffective for allowing false information into plea negotiations. "[A] guilty plea generally waives a defendant's right to claim that counsel's ineffectiveness prejudiced the defendant, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary." *State v. Bell*, 2024-Ohio-1502, ¶ 11 (4th Dist.), citing *State v. Williams*, 2014-Ohio-3415, ¶ 11-12 (8th Dist.), citing *State v. Spates*, 64 Ohio St.3d 269, 272 (1992), citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). To establish prejudice, the defendant must show "a reasonable probability that, but for counsel's deficient performance, the defendant would not have pled guilty to the offenses at issue and would have insisted on going to trial." *Id.* at ¶ 13, citing *State v. Khoshknabi*, 2018-Ohio-1752, ¶ 29 (8th Dist.) Sillman has not argued, let alone demonstrated, a reasonable probability that, but for counsel's allegedly deficient performance, he would

not have pled guilty to the offenses at issue and would have insisted on going to trial. Accordingly, we overrule the fourth assignment of error.

### C. Motion to Withdraw Guilty Pleas

{¶43} Sillman has not met his burden to show trial counsel was ineffective for not filing a motion to withdraw the guilty pleas. "To prove ineffective assistance on the basis of a failure to file a particular motion, a defendant must establish that the motion stood a reasonable probability of success." *State v. Turner*, 2019-Ohio-5470, ¶ 25 (4th Dist.). Crim.R. 32.1 states: "A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie,* 62 Ohio St.3d 521, 527 (1992). However, "a defendant does not have an absolute right to withdraw a plea prior to sentencing." *Id.* "[T]he trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* "Absent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed." *Id.*

{¶44} Initially, we observe that Sillman's suggestion that his new counsel was deficient for not properly advising him on a motion to withdraw the guilty pleas prior to the sentencing hearing is beyond the scope of the fifth assignment of error. We also observe that it appears Sillman waited to retain new counsel until shortly before the sentencing hearing. And it is not clear whether Sillman's new counsel had adequate time to advise him before the sentencing hearing; new counsel suggested he did not.

**{¶45}** In any event, the suggestion that Sillman had a reasonable and legitimate basis to withdraw his guilty pleas because he did not fully understand the plea agreement is not well-taken. As discussed above, the transcript from the April 14, 2014 hearing indicates Sillman understood the jointly recommended sentence before he entered his guilty pleas. And because Sillman has not shown that a motion to withdraw his guilty pleas had a reasonable probability of success, we cannot find trial counsel's performance deficient. Accordingly, we overrule the fifth assignment of error.

## VI. CONCLUSION

**{¶46}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the SCIOTO COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
       Michael D. Hess, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**