[Cite as *State v. Jensen*, 2019-Ohio-2474.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

 Appellee

v.

David Raymond Jensen

 Appellant

Court of Appeals No. L-18-1034

Trial Court No. CR0201701299

**DECISION AND JUDGMENT**

Decided:  June 21, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**SINGER, J.**

## Introduction

{¶ 1} Appellant, David Jensen, appeals from the January 16, 2018 judgment of the

Lucas County Court of Common Pleas, where he was sentenced to five years of

incarceration after pleading guilty pursuant to *North Carolina v. Alford*, to two counts of

gross sexual imposition.  For the reasons that follow, we affirm the trial court judgment.

## Background

**{¶ 2}** On February 14, 2017, appellant was indicted on four counts of rape in violation of R.C. 2907.02(A)(1)(b) and (B), felonies of the first degree, and on two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4) and (B), felonies of the third degree. Appellant was alleged to have had sexual contact with two children on numerous occasions in 1992.

**{¶ 3}** On November 15, 2017, appellant pleaded guilty pursuant to *Alford* to the two lesser counts of gross sexual imposition.

**{¶ 4}** At the hearing, the plea terms were read into the record, and the trial court proceeded with its colloquy pursuant to Crim.R. 11. During the colloquy, the court emphasized that the state would have to prove each and every element, and the state confirmed that it intended to prove appellant engaged in the sexual contact with the victims in Lucas County.

**{¶ 5}** A plea form was submitted in which appellant pleaded to Count Nos. 5 and 6, and confirmed that he understood the maximum penalty was 10 years of nonmandatory prison time. It further states appellant understood the nature of the charges, was satisfied with his attorney's advice, was not intoxicated, waived his constitutional rights, and that no threat or off-the-record promise had been made for the exchange of his plea. It reflects that the parties agreed to a five-year sentence, and that appellee agreed not to seek prosecution on additional victims and to nolle the remaining counts at sentencing.

**{¶ 6}** The court accepted the plea, concluding that appellant made a knowing, intelligent, and voluntary waiver of his rights, and that he understood the nature of the charges, the effect of the plea, and the maximum penalties which can be imposed. The court entered findings of guilty as to the charges for gross sexual imposition.

**{¶ 7}** Soon after the plea hearing appellant began to file pro se motions, although he was still represented by appointed counsel. He filed nine motions, including two to change his plea.

**{¶ 8}** On January 10, 2018, the trial court held its hearing to both address the pro se motions and to sentence appellant.

**{¶ 9}** With respect to the pro se motions, the trial court struck all nine because appellant was represented by counsel and hybrid representation is prohibited. The court also reevaluated its plea colloquy and appellant's responses from the November 15, 2017 hearing in which appellant entered his *Alford* plea. The court stated as follows:

> The court has reviewed, went into great detail to review all of that about the voluntary decision to make and change his plea, and clearly the record shows that there was no threat. There was no disagreements between himself and Counsel, and in fact he had indicated that he has no objection to the way Counsel explained things, what was happening, throughout the case, development of the case up to that point, and that he understood everything going on and that he did in fact intend to enter the plea.

3.

{¶ 10} The court then proceeded to sentence appellant to a total of five years of incarceration. The judgment entry was journalized on January 16, 2018.

{¶ 11} The journal entry indicates the court referred to "the Court Diagnostic and Treatment Center for a HB 180 screen," and that the diagnostic and treatment report was authored and dated December 20, 2017. The court confirmed that after considering the report appellant was to be classified and maintain registration as a sexually oriented offender. Appellant timely appeals from the January 16, 2018 judgment.

**Assignments of Error**

{¶ 12} Appellant sets forth the following assignments of error:

I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ACCEPTING A GUILTY PLEA WHICH WAS NOT MADE KNOWINGLY OR VOLUNTARILY, IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING HIS *PRO SE* MOTION TO WITHDRAW HIS PLEA.

4.

## First Assignment of Error

{¶ 13} Appellant first asserts his plea was not made knowingly or voluntarily. Appellee contends the plea was made knowingly and voluntarily.

{¶ 14} Crim.R. 11(C)(2) states, in pertinent part, as follows:

* * * (C) Pleas of guilty and no contest in felony cases. * * * (2)  In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to

prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

*See* Crim.R. 11(C)(2)(a)-(c).

{¶ 15} The underlying purpose of Crim.R. 11(C)(2) is to ensure the offender has the information needed to make a voluntary and intelligent decision regarding whether to plead guilty. *See State v. Contrearus*, 6th Dist. Lucas No. L-12-1114, 2014-Ohio-996, ¶ 6, citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). With respect to constitutional rights enunciated in Crim.R. 11(C)(2)(c), a trial court must strictly comply. *State v. Colbert*, 71 Ohio App.3d 734, 737, 595 N.E.2d 401 (11th Dist.1991). A trial court, however, need not use the exact language found in that rule. *Ballard*, *supra*, paragraph two of the syllabus. Rather, a trial court must explain those rights in a manner reasonably intelligible to the offender. *Id*.

{¶ 16} For nonconstitutional rights, strict adherence to Crim.R. 11(C) is not required. *Contrearus* at ¶ 7. Rather, the trial court must substantially comply, provided no prejudicial effect occurs before a plea is accepted. *State v. Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163 (1977). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 17} Here, appellant argues that his plea did not conform to Crim.R. 11(C), because the trial court did not explain during his plea colloquy that he would be subject to sex offender registration requirements and restrictions.

6.

{¶ 18} Appellee counters, noting that at the time appellant committed the crimes, the requirements imposed on sex offenders were civil and remedial in nature, "not criminal or punitive." *See*, *e.g.*, *State v. Strong*, 6th Dist. Wood No. WD-08-009, 2009-Ohio-1528, ¶ 41. As a result, appellee argues, notice of the registration requirements and restrictions were not a mandatory part of the Crim.R. 11 colloquy.

{¶ 19} "The A.W.A. is unconstitutional as applied to any sex offender who committed the underlying sex offense before the A.W.A's 2008 enactment." *See*, *e.g.*, *State v. Cruea*, 2d Dist. Miami No. 2012 CA 2, 2012-Ohio-5209, ¶ 22, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108.

{¶ 20} In *Cruea*, for instance, Cruea was convicted of rape which was found to have occurred between 1987 and 1994. *Id.* The trial court incorrectly classified Cruea as a sex offender under the Adam Walsh Act (A.W.A.). *Id.* The appellate court reversed, and held that plain error existed because "Cruea should have been classified under Megan's Law" due to the dates of the commission of the crime. *Id.*

{¶ 21} Appellant here must be classified under Megan's Law (House Bill 180) because he was alleged to have committed the relevant crimes in 1992. Under Megan's Law, the sex-offender consequences were civil and remedial in nature. *Strong*, *supra*. They were not a mandatory part of the Crim.R 11 colloquy. *Id.*

{¶ 22} We note that the trial court mentioned "HB 180," "House Bill 180 screening" and "House Bill 180 requirements," and addressed "the three types of offenders [appellant] will be screened for," that appellant or his counsel did not seek

7.

clarity or objected to the mention of HB 180 sex offender consequences, and that appellant and his counsel admitted in open court that he was familiar with sex offender registration processes and that he was classified similarly for a 2004 federal (child pornography) crime until the end of January 2018. Therefore, although not mandatory on the court to confirm, *id*., we find the totality of the circumstances indicate it was more likely than not that appellant subjectively understood by pleading guilty he would subject himself to certain restrictions and requirements as a sex offender.

{¶ 23} Accordingly, the first assignment of error is not well-taken.

## Second Assignment of Error

{¶ 24} Appellant next asserts the trial court abused its discretion by denying appellant's motion to withdraw his plea. Appellee contends the trial court did not abuse its discretion.

{¶ 25} Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 26} "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). "Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing." *Id.* "Therefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal

8.

of the plea." *Id.*; *see State v. Euler*, 6th Dist. Wood No. WD-17-058, 2019-Ohio-235, ¶ 7.

**{¶ 27}** We review a Crim.R 32.1 motion for abuse of discretion. *Id.* An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude in making the determination was unreasonable, arbitrary or unconscionable. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983).

**{¶ 28}** We specifically analyze the circumstances surrounding the motion pursuant to these nine factors:

> (1) whether the state would be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the crime.

*See State v. Richey*, 6th Dist. Sandusky No. S-09-028, 2011-Ohio-280, ¶ 43.

*(1) Prejudice to prosecution's case.*

**{¶ 29}** Appellant generally argues the factors weigh in favor of vacating the plea.

**{¶ 30}** Appellee specifically argues that its case would be prejudiced because "it would have to assemble witnesses and evidence for a case in which the crimes occurred

9.

in 1992—approximately 27 years ago." Appellee argues "[w]itnesses may no longer be available to the prosecution and memories of events may no longer be accurate." Appellee points to two cases for support, *Strong*, 6th Dist. Wood No. WD-08-009, 2009-Ohio-1528, and *State v. Baumgartner*, 6th Dist. Erie No. E-07-034, 2008-Ohio-5794.

{¶ 31} Nevertheless, we find these cases are distinguishable. Most notably, we find in both cases our concern under this factor was the accuracy of testimonial evidence to be given.

{¶ 32} In both *Strong* and *Baumgartner*, the prosecution was dealing with criminal events which had occurred within months or a few years of when trial would have taken place, had the pleas been withdrawn. The obvious rationale was that the prosecution's race against time in these cases to produce competent witnesses and evidence would be prejudiced by having to reassemble witnesses and have them recall fading memories. *Strong* at ¶ 30-31; *Baumgartner* at ¶ 14.

{¶ 33} In this case, however, we find the prosecution involved criminal events which were alleged to have occurred in May 1992. Appellant was not indicted in this matter until February 14, 2017. That is almost 25 years between the events and indictment. Appellant's plea was entered in on November 15, 2017, and he sought to withdraw it on November 28, and December 26, 2017, and again at the January 10, 2018 sentencing hearing. After 25 years, memories must have been sufficient for appellee to proceed to an indictment, and an additional few months or even a year or two would not have prejudiced appellee's case.

10.

**{¶ 34}** Accordingly, this first factor weighs in favor of granting appellant's motion to withdraw his plea.

*(2) Competency of defense counsel.*

**{¶ 35}** Appellant argues his counsel was ineffective for failing to inform him about his sex offender consequences before his plea. Appellee contends the record demonstrates appellant's counsel was highly competent.

**{¶ 36}** This factor is analyzed like an ineffective assistance claim. *See Strong*, 6th Dist. Wood No. WD-08-009, 2009-Ohio-1528, at ¶ 32. "[I]n order to prove that trial counsel is ineffective, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense[]" and "affected whether the defendant made a knowing and voluntary plea." *State v. Doak*, 7th Dist. Columbiana Nos. 03CO15, 03CO31, 2004-Ohio-1548, ¶ 3; *State v. Romero*, Slip Opinion No. 2019-Ohio-1839, ¶ 18.

**{¶ 37}** The November 15, 2017 transcript in this case reflects that at the plea hearing counsel informed appellant to the extent possible and in light of counsel's limited information about the possibility and extent of sex offender consequences. At the opening of the hearing counsel acknowledged to the court that appellant was "aware that the Court needs to refer this matter to Court Diagnostic and Treatment Center for purposes of this evaluation and that may delay sentencing for four to six weeks." The trial court subsequently suggested appellant resolve with counsel any "questions" he may

11.

have had about the screening and imposition of sex offender "House Bill 180" consequences, and appellant and counsel proceeded because no questions remained.

{¶ 38} We cannot say the record supports defense counsel breached an essential duty to appellant's prejudice.

*(3) Extent of Crim.R. 11 colloquy and (8) understanding of charges and penalties.*

{¶ 39} Appellant argues he was not afforded an opportunity to understand the charges and penalties because the trial court did not provide a full Crim.R. 11 colloquy where there was no explanation he would be subject to sex offender consequences. Appellee argues the court properly conducted its colloquy and that although sex offender consequences were not a mandatory part, appellant subjectively understood the sex offender consequences.

{¶ 40} In *Strong*, we addressed the same argument appellant asserts here. *See Strong*, 6th Dist. Wood No. WD-08-009, 2009-Ohio-1528, at ¶ 39-41. We rejected it, recognizing that no legal authority supported that "a discussion of the of R.C. Chapter 2950 registration requirements is a mandatory part of the Crim.R. 11 colloquy." *Id*. at ¶ 41.

{¶ 41} Additionally, based on the trial court's extensive explanation of constitutional and nonconstitutional rights to appellant in open court, we find appellant was provided a full Crim.R. 11 colloquy and hearing from and in which appellant understood the consequences of his plea.

12.

*(4) Extent of hearing and (5) court's consideration of motion to withdraw plea.*

**{¶ 42}** When evaluating these factors, we note "[t]he scope of a hearing on an appellant's motion to withdraw his guilty plea should reflect the substantive merits of the motion." *State v. Hartman*, 6th Dist. Huron No. H-17-014, 2018-Ohio-4452, ¶ 21.

**{¶ 43}** As an example, in *Hartman* we held that these factors weighed in favor of Hartman. *Id.* at ¶ 23. We recognized that the *Hartman* trial court conducted an extensive hearing on the substantive merits of Hartman's motion to withdraw his plea. We noted that the trial court allowed arguments from both sides, and that Hartman and his counsel were personally questioned. *Id.* at ¶ 21. Despite the "extensive hearing," we took issue with the *Hartman* trial court's "undue emphasis" on the age of the case, which we determined overshadowed the court's consideration of the merits of Hartman's motion. *Id.* at ¶ 22.

**{¶ 44}** Initially, we note appellant's November 28 and December 26, 2017 pro se motions were properly stricken from the record by the trial court.

**{¶ 45}** With respect to the January 10, 2018 oral motion made at sentencing, we review the transcript to determine the extent of the hearing and whether the court gave full and fair consideration. The transcript reflects as follows:

> **THE DEFENDANT:** Do I get to anything to say?
>
> **THE COURT:** You do, and it is exactly that time. So that is perfect timing, sir. Mr. Jensen, you have a right to allocution before sentencing. Anything you would like to say today prior to sentencing?

13.

**THE DEFENDANT:** Yes, Your Honor. Still according to Criminal Rule 32.1 I can change my plea at any time, and I am invoking that rule. I would like to change this plea because it is not in my best interest. Because had Prosecution the (sic) followed through on their responsibility to provide me with evidence that is in my favor they would have found through extensive address verification not even the mother, the father, nor these alleged victims ever lived at 741 Woodville Road, in May, June 1992.

Therefore, no crime could have occurred or has occurred in your jurisdiction. I have been fighting on that. Mr. Popil, I have told him several times since April of 2017 (sic) never put forth my alibi * * *.

{¶ 46} After additional exchanges in which, among others, appellant explained to the court that he always disputed the location of the alleged crimes, he also stated he had expressed his concern with counsel and that counsel had not properly raised his concern. Appellant said it would have been impossible to speak through his lawyer, as he claimed his counsel refused to speak.

{¶ 47} The exchange between the court and appellant finished as follows:

**THE DEFENDANT:** Other than that I would like to stick to Criminal 32.1 and withdraw my plea. I would take this to jury trial and prove jurisdiction.

14.

**THE COURT:** Motion denied. And I will stand by the denial of the motion once again.

{¶ 48} After the court made this ruling, the state mentioned how it would be able to prove where the events occurred. We find appellant had an opportunity to be heard, and that the court below gave full and fair consideration to appellant's motion.

{¶ 49} Accordingly, the third and eighth factors weigh in favor of affirming the denial of appellant's motion to withdraw his plea.

*(6) Timing of motion to withdraw plea.*

{¶ 50} Appellee recognizes appellant's initial pro se motion to withdraw his plea occurred only 13 days after the plea was entered.

{¶ 51} Crim.R. 32.1, *supra*, provides that a motion to withdraw a plea of guilty may be made "before sentence is imposed."

{¶ 52} Here, appellant's plea was entered on November 15, 2017. His written motions, which were properly stricken from the record, were filed on November 28 and December 26, 2017. We do not consider these motions for purposes of this analysis. Appellant also moved to withdraw his plea at sentencing on January 10, 2018. Because this oral motion was made before being sentenced, albeit at the absolute last possible moment, we cannot say this factor weighs against withdrawing the plea.

15.

*(7) Reasons for motion to withdraw plea.*

**{¶ 53}** Appellant argues his motion to withdraw his plea "should have been granted by the trial court to correct inconsistencies in the State's evidence as to where the alleged acts occurred." Appellee argues appellant had an impermissible change of heart.

**{¶ 54}** "Withdrawal of a plea will not be permitted merely because a defendant has experienced a change of heart." *Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715, at ¶ 6, citing *State v. Posey*, 6th Dist. Ottawa No. OT-12-028, 2014-Ohio-1994, ¶ 9.

**{¶ 55}** Here, our review of the written and oral motions made to the trial court reveal appellant argued to withdraw his plea to challenge jurisdiction and present other objections, which he argued were possible because of an alibi and impossibility that the alleged location was a crime scene. We however cannot say this was a reason to withdraw his plea, because the record demonstrates that he considered this before entering his plea.

**{¶ 56}** Specifically, at a May 3, 2017 hearing, appellant, his counsel, the prosecutor, and the court all engaged in discussion about how venue was a potential issue, as follows:

> **THE COURT:** All right. What's the status, Mr. Popil [defense counsel]?
>
> **[COUNSEL]:** Your Honor, the Defense is requesting a trial date be set. I have had extensive discussions with the State regarding this. There may be further developments in terms of perhaps having the matter actually

proceed in a different jurisdiction, Wood County. The investigator is checking on that.

So if we could set a trial date I will let the Court know whether the matter will proceed within probably a month or so.

**[PROSECUTOR]:** That is correct, Your Honor. It is the State's understanding the only element in question is venue regarding this case. So the State believes it was in Lucas County. However, the Defendant is alleging that it happened in Wood County.

So I will talk to Wood County, and if he wants to be convicted in Wood County we can make that happen.

**THE COURT:** I won't be so presumptuous that that is going to happen. Let's back up.

**THE DEFENDANT:** Railroad job.

**[COUNSEL]:** There are other elements we are contesting other than just venue, but venue is the main element at this point.

**THE COURT:** Can we simply say venue is an issue and leave it at that?

**{¶ 57}** Additionally, at the November 15, 2017 plea hearing, the trial court explained to appellant that the state would have to prove each and every element of the crime beyond a reasonable doubt, and the state subsequently noted that it would show

17.

that appellant did in fact live with the victims "at 741 Woodville Road in Lucas County, Ohio, and did have sexual contact [there]."

{¶ 58} Yet appellant pleaded pursuant to *Alford*, despite these open court dialogues. We cannot say the issue of where the crimes happened was not considered by him prior to entering his *Alford* plea. This supports that appellant experienced a change of heart.

{¶ 59} As an additional consideration we note how the trial court discussed and explained the nature of the *Alford* plea to appellant:

> **THE COURT:** This plea as Mr. Popil [(defense counsel)] I am sure already told you is a specialized plea. It is called a guilty plea, but it is being done pursuant to a case called North Carolina versus Alford. It is where you maintain your innocence on your original charges as they are contained in the indictment. This was a six count indictment, but you enter pleas of guilty to lesser charges to limit the exposure that you have on sentencing.
>
> As we discussed earlier the first four counts of the indictment are mandatory sentences with sentencing ranges of anywhere from 2 to 10 years. On this plea with Counts 5 and 6 the sentencing range, the maximum is 5 years on each sentence, so a total of 10 years of incarceration.

18.

I will go over this more in detail in a minute, but that there greatly reduces your exposure as to Counts 1 through 4, and that is the purpose of a plea of guilty by way of North Carolina versus Alford, to accept responsibility even though you maintain your innocence yet not be exposed to the more serious sentencing options. Do you understand that?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Is that the discussion you have had with your attorney?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Is that generally how he explained it as well?

**THE DEFENDANT:** Yes.

{¶ 60} Based on this exchange, we find appellant confirmed he understood that the trial court was accepting his *Alford* plea, regardless of whether he was ever guilty of the crimes as charged. Accordingly, and in consideration of these highlighted circumstances, this seventh factor weighs in favor of affirming the denial of appellant's motion to withdraw his plea.

*(9) Obvious guilt or potential defense.*

{¶ 61} As noted above, appellant argues that his motion to withdraw his plea should have been granted because of inconsistencies in evidence, a potential alibi, and an issue related to an incorrect location of the alleged crimes. Appellee argues there is nothing in the record to demonstrate that appellant has a viable defense. We agree.

19.

Further, appellant's understanding of the meaning and consequences of his *Alford* plea was demonstrated in the plea colloquy. We find that appellant argues merely a change of heart.

**{¶ 62} Conclusion**

**{¶ 63}** Appellant's two assignments of error are found not well-taken and are denied. The January 16, 2018 judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____

                                                           JUDGE

Arlene Singer, J.         

                                                           _____

Gene A. Zmuda, J.                                                JUDGE

CONCUR.

                                                             _____

                                                           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.