[Cite as *State v. Williams*, 2025-Ohio-4352.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                Court of Appeals No.  E-24-048

    Appellee                            Trial Court No.  2022 CR 0247

v.

Justin Williams                          **DECISION AND JUDGMENT**

    Appellant                           Decided:  September 16, 2025

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney,
and Kristin R. Palmer, Assistant Prosecuting Attorney,
for appellee.

Karin L. Coble, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Justin Williams, from

the September 27, 2024 judgment of the Erie County Common Pleas Court.  For the

reasons that follow, we affirm the judgment of the trial court, in part.

**{¶ 2}** Williams asserts two assignments of error:

1. The trial court abused its discretion when it refused to permit [Williams] to withdraw his plea before sentencing.

2. The trial court's judgment entry does not comport with the indictment and the plea agreement.

## Background

**First Traffic Stop, Charges, Motions**

**{¶ 3}** On February 18, 2022, Sandusky Police Department officers were conducting surveillance of a house on Pearl Street in Sandusky, Ohio, which was considered a "drop house" where drugs were delivered, but where no one lived. Williams arrived at the Pearl Street house and retrieved a postal package ("the package"), which contained suspected contraband (counterfeit pills), from the house. Williams drove away, but was stopped by the officers for failing to use a turn signal and having excessively tinted windows. Marijuana, mushrooms, methamphetamines and counterfeit pills were found in Williams' vehicle. Williams was arrested.

**{¶ 4}** As a result of that traffic stop ("the first stop"), Williams was indicted, on October 13, 2022, for the following offenses: (1) aggravated possession of drugs, a first-degree felony, with major drug offender and forfeiture specifications; (2) aggravated trafficking in drugs, a first-degree felony, with major drug offender and forfeiture specifications; (3) possession of a fentanyl-related compound, a first-degree felony, with a forfeiture specification; (4) trafficking in a fentanyl-related compound, a first-degree felony, with a forfeiture specification; (5) aggravated possession of drugs, a fifth-degree

2.

felony, with a forfeiture specification; (6) aggravated trafficking in drugs, a fourth-degree felony, with a forfeiture specification; and (7) assault, a fourth-degree felony.

{¶ 5} On December 16, 2022, Williams' defense counsel filed a motion to suppress in which it was argued, inter alia, the search and seizure were illegal and mere receipt of drugs was insufficient to prove drug trafficking. Williams claimed the package was addressed to a person unknown to him, he did not open the package so as to maintain the privacy of the unknown person and he was on his way to the post office to return the package to postal authorities when he was stopped by the police. A suppression hearing was held, and on August 31, 2023, the trial court denied the motion to suppress evidence.

{¶ 6} In September 2023, the following motions were filed by defense counsel on Williams' behalf: a motion in limine, to exclude evidence relating to the marijuana found during the first stop; a motion for *Brady* materials; and a motion to exclude Evid.R. 404(B) evidence. Subsequently, the motion in limine was denied, the State responded to the *Brady* motion, representing there were no cooperating witnesses to disclose, and the motion to exclude Evid.R. 404(B) evidence was granted as to Williams' drug trafficking offenses that occurred over 10 years prior, but the motion was denied as to evidence of Williams' previous contact with the Pearl Street house.

**Second Traffic Stop, Charges, Motions**

{¶ 7} On April 15, 2022, Williams was driving in Sandusky, Ohio, when he was stopped for a traffic violation. A search of Williams' vehicle yielded a large amount of

3.

marijuana and paraphernalia (a scale and baggies) consistent with trafficking in marijuana.

{¶ 8} As a result of that traffic stop ("the second stop"), on October 13, 2023, a supplemental indictment was returned against Williams for one count of possession of marijuana, a fifth-degree felony and one count of trafficking in marijuana, a fourth-degree felony.

{¶ 9} On January 23, 2024, defense counsel filed a motion to dismiss the counts in the supplemental indictment on speedy trial grounds. On February 1, 2024, the trial court denied that motion. On that same day, Williams' counsel filed a motion for severance, requesting that the counts from the supplemental indictment be severed from the counts in the original indictment. On February 2, 2024, the trial court denied that motion.

**Plea**[1]

{¶ 10} On February 2, 2024, a plea hearing was held where the trial court conducted a complete and thorough colloquy, which was both video and audio recorded. Williams pled guilty to one count of attempted aggravated possession of drugs, a second-degree felony, and one count of trafficking in marijuana, a fourth-degree felony; the remaining counts of the indictments were dismissed. Williams and the State agreed to recommend a sentence of five to seven and one-half years on the attempted aggravated

---

[1] We recognize that Williams entered guilty pleas to two offenses, but for purposes of this opinion, we will refer to the singular "plea," as Williams did.

4.

possession of drugs count and one year on the trafficking in marijuana count, to run concurrently. A sentencing hearing was scheduled for April 2024.

**Motions to Withdraw Plea/Change of Counsel**

{¶ 11} On March 5, 2024, before sentencing and after changing attorneys, Williams filed a motion to withdraw guilty plea. He alleged his plea was not knowingly, intelligently and voluntarily entered and he "suffered prejudice as the result of pre[]indictment and potential violation, but was not advised of the same by his attorney who counseled his guilty plea."

{¶ 12} On March 21, 2024, Williams filed a supplemental motion to withdraw plea in which he argued his counsel did not advise him of a line of defenses. The first defense was that the warrantless search of his vehicle, on April 15, 2022, was presumptively unreasonable but he did not have the opportunity to litigate that through a motion to suppress. The second defense was that Williams was not advised that the unjustified delay between the alleged offense and the indictment resulted in actual prejudice and violated his right to due process. Lastly, Williams felt pressured to enter the guilty plea, and he had a witness who could testify that Williams was not aware of the contents of the package, which led to the most serious charges in the initial indictment.

**Evidentiary Hearing and Judgment Entry**

{¶ 13} The evidentiary hearing on Williams' motion to withdraw plea was held on April 25, 2024, May 16, 2024 and July 1, 2024.

5.

**{¶ 14}** The trial court issued its 12-page judgment entry on September 6, 2024, and set forth that in deciding whether to grant or deny a presentence motion to withdraw plea, it must consider and analyze the nine factors in *State v. Fish*, 104 Ohio App.3d 236 (1st Dist. 1995) ("Nine Factor Analysis").[2]  The trial court also cited, inter alia, *State v. Warren*, 2024-Ohio-1072 (6th Dist.).

**{¶ 15}** Based on the evidence from the evidentiary hearing and the record, the court found the following when applying the Nine Factor Analysis to Williams' case. (1) Whether the State would be prejudiced by withdrawal of the plea.

**{¶ 16}** The trial court found the State would not be prejudiced, as the State did not present evidence it would be prejudiced if Williams' motion to withdraw was granted. (2) The representation afforded to Williams by counsel.

**{¶ 17}** The court found Williams received very competent, legally sound and thorough representation by two experienced defense attorneys.  One of the attorneys testified at the evidentiary hearing about, inter alia, her background and stated that she sent discovery to Williams and went over it with him, she talked with him about motions that could be and were filed, and she explained to him the criminal counts, specifications and possible penalties.  Also, at the plea hearing, Williams was asked if he was satisfied with his attorneys' representation and he confirmed he was.

---

[2] While the *Fish* court listed eight factors, *id.* at 240, that court also identified a ninth factor.  *Id.* at 239-240.

6.

(3) The extent of the Crim.R. 11 hearing.

{¶ 18} The court found Williams had a very thorough and complete plea hearing, understood his guilty plea, and had no questions. Both defense attorneys were at the plea hearing, Williams was advised of his constitutional rights and acknowledged: he heard the plea agreement and agreed with it; he understood the nature of the offenses to which he was pleading guilty; any pending motions were disposed of pursuant to the plea; he was satisfied with his counsel; pleading guilty meant he was guilty entirely of the offenses, not just partially guilty of them and he was pleading guilty because he was guilty; no one forced, coerced or placed him under duress in entering his plea; and he was not offered, promised or guaranteed anything for his plea.

(4) The extent of the evidentiary hearing on the motion to withdraw.

{¶ 19} The court found that it allowed for a thorough and comprehensive hearing on Williams' motion, as the hearing was conducted over multiple days at which Williams testified, one of his attorneys testified and they were both subject to direct and cross examination. In addition, the State presented 13 exhibits and played the recording of the plea hearing.

(5) Whether the court gave full and fair consideration to the motion to withdraw.

{¶ 20} The court believed it did so as it reviewed the motion and other filings, it reviewed the record and conducted the three-day evidentiary hearing.

7.

(6) Whether timing of the motion was reasonable.

{¶ 21} The court found Williams' motion was filed in a reasonable time, as he pled guilty on February 2, 2024, and filed his motion to withdraw on March 5, 2024.

(7) The reasons for the motion.

{¶ 22} The court noted that Williams claimed: he felt forced to enter his plea and did not have enough time to consider the new plea; he was not advised of the possible defenses of the presumptive unreasonableness of the search in the second stop; he had factual defenses; and there was preindictment delay. The court extensively and methodically examined each claim individually.

{¶ 23} With respect to the preindictment delay claim, the court found that Williams' counsel's (who filed the motion to withdraw) application of *State v. Adams*, 2015-Ohio-3954, that "'[a] delay becomes presumptively prejudicial as it approaches one year in length'" in connection with a preindictment delay was "an incorrect reading of *Adams*." The trial court then quoted what the *Adams* court stated: "'Unlike a Sixth Amendment speedy-trial claim, no presumption of prejudice arises in the due-process context when a preindictment delay exceeds a particular length of time.'" *Id.* at ¶ 98.

{¶ 24} Following the trial court's detailed analysis of each claim, it reached the conclusion, based on the totality of the evidence from the evidentiary hearing, the record and case law, that Williams had a "change of heart." The court observed that generally, a change of heart or mistaken belief about pleading guilty is not a reasonable basis for the withdrawal of a guilty plea.

8.

(8) Whether Williams understood the nature of the charges and potential sentences.

{¶ 25} The court found, after it reviewed the Crim. R. 11 plea hearing, that Williams had a complete understanding of the nature of the charges to which he was pleading guilty, as well as the possible sentences.

(9) Whether Williams was perhaps not guilty or had a complete defense to the crimes.

{¶ 26} The court found that Williams was guilty of the offenses to which he entered the guilty plea, and he did not have a complete defense to the offenses. At the plea hearing, Williams was asked if he was pleading guilty because he was guilty, and he responded, "Yes sir." As for a complete defense to the offenses, Williams' strongest contention was that he suffered preindictment delay, which he claimed would have barred the prosecution of the supplemental indictment. Yet, Williams' claims that his due process rights were prejudiced by the delay were vague and speculative, and he presented no evidence of actual prejudice at the evidentiary hearing.

{¶ 27} In addition, the trial court found that in the proceedings regarding the motion to withdraw plea, which included the evidentiary hearing, Williams' credibility was lacking, and the court set forth examples of the credibility concerns. The court denied the motion to withdraw guilty plea.

**First Assignment of Error**

{¶ 28} Williams argues the trial court abused its discretion and applied the incorrect standard in denying his presentence motion to withdraw his guilty plea. He contends he presented evidence that he had a meritorious defense of preindictment delay,

9.

that he would have filed a suppression motion, and that he did not receive all of the discovery from trial counsel.

{¶ 29} Williams presents his own examination of the Nine Factor Analysis, wherein he takes issue with factors 2, 5, 7, 8 and 9. The State also sets forth its examination of the Nine Factor Analysis, which includes the factors challenged by Williams. A summary of each examination follows.

(2) The representation afforded by counsel.

{¶ 30} Williams claims his trial counsels' representation was lacking in two respects: not investigating and discussing the facts of the second stop and supplemental indictment with him, and waiting until two hours before the plea deadline to inform him of the offer.

{¶ 31} The State counters the representation afforded to Williams was "'very competent, legally sound, and thorough . . . by . . . experienced attorneys,'" as found by the trial court, which finding, the State contends, is supported by the evidence in the record. The State details Williams' original counsel's evidentiary hearing testimony and notes the many motions that original counsel filed on Williams' behalf. The State observes Williams' original attorneys successfully negotiated a plea where Williams pled guilty to two counts, rather than the original eleven counts in the indictments, and one of those counts was amended from a first-degree felony to a second-degree felony and the major drug offender specification was dismissed. The State also observes Williams' original attorneys negotiated a recommended sentence for both counts to be served

10.

concurrently. In addition, the State notes that Williams confirmed at his plea hearing that he was satisfied with his attorneys' representation.

(5) Whether the trial court gave full and fair consideration to the motion.

{¶ 32} Williams asserts the trial court's judgment entry was detailed but there were misstatements of fact and law, and the court did not give fair consideration to the motion.

{¶ 33} The State counters the trial court gave full and fair consideration to the motion to withdraw, as the court heard Williams' arguments at the multi-day hearing, which was supplemented by multiple rounds of briefing, the court took the matter under advisement for two months and then issued its 12-page judgment analyzing Williams' arguments in detail. The State observes that Williams claims "there are misstatements of fact and law" in the judgment entry, but he did not go into any further detail. And, while Williams contends the trial court applied the incorrect standard, the State argues the court applied the same multi-factor test that this court applies when reviewing decisions on motions to withdraw pleas, citing *State v. Callahan*, 2024-Ohio-5621, ¶ 33 (6th Dist.).

(7) The reasons for the motion.

{¶ 34} Williams contends the trial court found that he testified that he was not told it was possible to file a "motion to suppress the second stop," but he actually testified that his attorneys failed to advise him that he could have had a *hearing* on a motion to suppress. He also claims the court found that his trial counsel testified she did not talk to Williams "in detail" about the second stop, but counsel actually testified she did not have a talk with him about the second stop. In addition, Williams submits that he has a fact

11.

witness, M.M., who would testify that Williams did not know the contents of the package, and he was planning to call M.M. as a witness, and she would have testified that she asked him to take the package to the post office.[3] Williams notes the court found his testimony on this point not credible and stated that M.M. was served with subpoenas two previous times, so Williams knew where she was. However, Williams asserts this is not the standard, and if M.M. were believed, her testimony that the package did not belong to Williams would have been a complete defense to the charge.

{¶ 35} The State notes that Williams cited four reasons for wanting to withdraw his plea, each of which the trial court reviewed and rejected. The State contends that the record demonstrates the true basis for Williams' motion was a change of heart and he does not have a complete defense to any of the charges. The State cites *State v. Euler*, 2019-Ohio-235, ¶ 6 (6th Dist.) ("Withdrawal of a plea will not be permitted merely because a defendant has experienced a change of heart.").

{¶ 36} The State observes, with respect to feeling rushed, that Williams claims he felt forced to enter the guilty plea because he only had two or three hours to make a decision. The State contends, however, that "'[t]here is no set amount of time a defendant must spend contemplating a plea offer to enter a valid guilty plea,'" citing *State v. Sillman*, 2024-Ohio-3363, ¶ 31 (4th Dist.). Moreover, the State observes the trial court

---

[3] A review of the transcript of the evidentiary hearing shows that Williams testified he had a witness who could testify about the drugs found in the first stop, not the second stop. Williams offered no evidence or testimony about defenses to the second stop at the evidentiary hearing or in any court filing.

12.

took note that plea agreements had previously been discussed but were not acted on by Williams. In addition, the State observes that Williams confirmed at the plea hearing that no one had forced, coerced, threatened, or placed him under duress to enter the plea.

{¶ 37} The State notes, regarding Williams' claim that his trial counsel failed to advise him of the presumptive unreasonableness of the search in the second stop and counsels' failure to file a motion to suppress, Williams' trial counsel testified at the evidentiary hearing that she filed a motion to sever the charges in the supplemental indictment, and she was not going to file a motion to suppress until after she had the trial court's ruling on whether the counts would be severed. The State also notes the trial court found that "[i]t is a stretch to imagine that [Williams] knew of the right to challenge that stop (1st stop), but not challenge the 2nd stop if he felt it was in violation of his rights." Further, the State maintains there is little information in the record concerning the second stop, so the record fails to demonstrate a reasonable probability that a motion to suppress would have been successful if filed, and cites *State v. Walters*, 2013-Ohio-695, ¶ 19 (4th Dist.) (denial of motion to withdraw plea affirmed based on counsel's failure to file suppression motion since there was limited information in the record with respect to the details of the crimes).

{¶ 38} The State notes, concerning the preindictment delay of the supplemental indictment, Williams claims his trial counsel was ineffective by not filing a motion or discussing the issue with him. The State observes that Williams' trial counsel testified at the evidentiary hearing that although she did not file a motion specific to preindictment

13.

delay, she believed the issue was in the motion to dismiss that she filed. In addition, the State argues that Williams failed to identify any relevant evidence or testimony which he would have been able to present in his defense but could not, due to the delay in returning the supplemental indictment. Rather, Williams alleged in his motion to withdraw that his plea was "not knowingly, intelligently and voluntarily entered into because [he] suffered the same by his attorney who counseled his guilty plea[.]" And, when asked at the evidentiary hearing what prejudice he had faced due to the delay, Williams offered vague references to his "stress, health." The State insists Williams offered no evidence of actual prejudice, and without a showing of actual prejudice, he has no defense based on a claim of preindictment delay. Moreover, the State submits it presented evidence of a justifiable reason for the delay, as the lab report from BCI (Ohio Bureau of Criminal Investigation) for the drugs related to the charges in the supplemental indictment indicates the evidence was analyzed on September 8, 2023, the report was issued on September 22, 2023, and the second indictment was filed three weeks after the report was issued.

(8) Whether Williams understood the nature of the charges and potential sentences.

{¶ 39} Williams claims he was obviously confused, as he thought that withdrawing his plea was possible based upon what the judge said at the plea hearing.

{¶ 40} The State counters the trial court found Williams "had a complete understanding of the nature of the charges he was pleading guilty to, as well as the potential sentences." The State observes that at the plea hearing, the court explained the charges and maximum possible penalties of the counts and Williams acknowledged that

14.

he understood. While Williams claims he "was obviously confused, as he thought that he would be able to withdraw his plea, based upon what the judge said at the plea hearing," the State insists Williams was never told at the plea hearing he would be able to withdraw his plea. The State points out that Williams did not provide any citation to the plea hearing transcript to support his claim. The State also takes note of the trial court's finding that Williams' "'credibility was a concern,'" due, in part, to Williams' claim that the judge indicated that he could withdraw his plea. The State cites to *State v. Davis*, 2020-Ohio-4539, ¶ 21 (6th Dist.) ("The good faith, credibility and weight of the movant's assertions in support of the motion [to withdraw a guilty plea] are matters to be resolved by the trial court.") and *State v. Goings*, 2014-Ohio-2322, ¶ 3 (6th Dist.) ("[T]he trial court judge. . . is in the better position to evaluate both the motivation of the defendant in pleading guilty and the credibility and weight to be given to the reasons for seeking to withdraw the plea.").

(9) Whether Williams was perhaps not guilty or had a complete defense to the charges.

{¶ 41} Williams again asserts that he would have subpoenaed M.M. to testify. Williams notes the trial court did not place much weight on this claim and found it lacking credibility, but Williams argues that is not the standard, citing, inter alia, *State v. Kutnyak*, 2012-Ohio-3410 (6th Dist.). Williams maintains M.M.'s testimony, if believed, would be a complete defense to the charge, and Williams is credible because he faces much more serious charges at trial, which charges were dismissed with his plea. Williams further asserts that his trial counsel seemed to admit that she did not focus on

the second indictment because the charges in the first indictment were much more serious, and counsel was not prepared for trial.

{¶ 42} The State observes, regarding Williams' factual defense to the charges in the original indictment, that he claims he was unaware there were drugs in the package and his witness, M.M., will testify that the package came to her home and she asked him to return it to the post office. The State notes the trial court found M.M. was subpoenaed twice by Williams months before he pled guilty, which the State submits is relevant, as it shows Williams' awareness of M.M. and his intention to call her as a witness before he entered his plea; thus, she is not the reason for wanting to withdraw his plea. The State cites *State v. Jensen*, 2019-Ohio-2474, ¶ 55 (6th Dist.) (the reason for wanting to withdraw plea was considered by defendant before entering his plea).

### Standard

{¶ 43} Whether or not to grant a motion to withdraw a guilty plea is a decision within the discretion of the trial court. *State v. Barnes*, 2022-Ohio-4486, ¶ 13, citing *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph two of the syllabus. An appellate court reviews a trial court's denial of a presentence motion to withdraw plea for an abuse of discretion. *Barnes* at ¶ 13, citing *Xie* at paragraph two of the syllabus. An abuse of discretion means the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610 (1996).

16.

**Law**

**Motion to Withdraw Plea**

{¶ 44} Crim. 32.1 provides that "[a] motion to withdraw a plea of guilty. . . may be made only before sentence is imposed." While a presentence motion to withdraw guilty plea should be freely allowed and treated with liberality, a defendant does not have an absolute right to withdraw a guilty plea before sentencing. *Xie* at 526 and paragraph one of the syllabus. When a defendant files a presentence motion to withdraw plea, "the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* at 527.

{¶ 45} Regarding the Nine Factor Analysis set forth above, it is a balancing test, and no one factor is conclusive. *State v. Hartman*, 2018-Ohio-4452, ¶ 14 (6th Dist.), citing *State v. Zimmerman*, 2010-Ohio-4087, ¶ 13 (10th Dist.). Ultimately, the question a trial court must answer is whether or not there is a reasonable and legitimate basis for withdrawing the plea, and the question to be answered by an appellate court is whether the trial court abused its discretion in reaching its decision. *Hartman* at ¶ 14.

{¶ 46} One of Williams' reasons for wanting to withdraw his plea is that he felt rushed. In *Sillman*, 2024-Ohio-3363, ¶ 31 (4th Dist.), the court set forth it was common among criminal defendants to face time pressure when responding to a plea offer, and it was hardly exceptional enough to substantiate the overbearing of a defendant's will.

17.

**Preindictment Delay/Actual Prejudice**

{¶ 47} In *State v. Bourn*, 2022-Ohio-4321, the Supreme Court of Ohio reexamined the framework for analyzing a due process claim based on preindictment delay and stated:

> "[P]reindictment delay violates due process only when it is unjustifiable and causes actual prejudice." [*State v.*] *Jones*, . . . 2016-Ohio-5105, . . . ¶ 12. This court has "firmly established a burden-shifting framework for analyzing a due-process claim based on preindictment delay." *Id.* at ¶ 13. Pursuant to that framework, a defendant first bears the burden of presenting evidence that the preindictment delay caused actual prejudice. *Id.*, citing *State v. Whiting*, 84 Ohio St.3d 215, 217 . . . (1998), and *State v. Adams*, . . . 2015-Ohio-3954, . . . , ¶ 99. After the defendant has provided evidence of actual prejudice, the burden shifts to the [S]tate to produce evidence of a justifiable reason for the delay. *Id.*, citing *Whiting* and *Adams*.
>
> The *Jones* court explained that the actual-prejudice determination is inherently dependent on the particular facts of each case: "A determination of actual prejudice involves '"a delicate judgment"' and a case-by-case consideration of the particular circumstances." *Id.* at ¶ 20, quoting *State v. Walls*, . . . 2002-Ohio-5059, . . .¶ 52, quoting *United States v. Marion*, 404 U.S. 307, 325 . . . (1971). In *Jones*, this court rejected both a defendant-friendly standard that requires applying "amorphous" concepts of "fundamental justice" to prove actual prejudice and a prosecutor-friendly standard that requires "the loss of evidence with demonstrably exculpatory value that goes beyond attacking the credibility of the state's evidence." *Id.* at ¶ 23.

*Id.* at ¶ 11, 12. *See also State v. Luck*, 15 Ohio St.3d 150 (1984).

{¶ 48} To prove actual prejudice, this court, in *State v. Robinson*, 2008-Ohio-3498, ¶ 121 (6th Dist.), set forth that a defendant must show, by concrete proof, the exculpatory value of evidence which is allegedly missing, or "[i]n other words, a defendant must show how lost witnesses and physical evidence would have proven the defendant's asserted defense." A showing of prejudice "based on mere speculation will not be found

18.

sufficient." *Id.* When deciding if the prejudice alleged by a defendant qualifies as "actual prejudice," the court must balance the claimed prejudice against the remaining evidence. *Id.* at ¶ 122.

**Analysis**

**Nine Factor Analysis**

{¶ 49} We will first determine whether or not the trial court abused its discretion when it considered the Nine Factor Analysis and denied Williams' motion to withdraw plea. We note, again, that Williams only took issue with factors 2, 5, 7, 8 and 9, and thus, we limit our consideration to those factors.

{¶ 50} Our review of the record shows, with respect to factor 2, the trial court found in its judgment entry, and we agree, that based on the testimony presented at the evidentiary hearing, Williams was represented by two highly competent attorneys at the plea hearing, and Williams confirmed, when asked at the plea hearing, that he was satisfied with his lawyers' representation.

{¶ 51} As to factors 5 and 7, a review of the record reveals the trial court held a three-day evidentiary hearing on Williams' motion to withdraw plea, then in its judgment entry the court outlined the reasons offered by Williams for wanting to withdraw his plea, cited to relevant law, applied the law and thoroughly considered and addressed each factor of the Nine Factor Analysis and explained why Williams' reasons were insufficient to permit withdrawal of the plea. Based on the record and the applicable law, we find the

trial court gave full and fair consideration to Williams' motion and we find no abuse of discretion with the court's rationale and findings.

{¶ 52} Regarding factor 8, the trial court found, and we agree, that at the Crim.R. 11 plea hearing, Williams was advised of his rights, the charges and penalties, and when asked if he understood the nature of the charges to which he was pleading guilty, Williams affirmed that he did. In addition, Williams was asked if he had any questions about the potential sentence, and he answered in the negative. We therefore find that the trial court ensured that Williams understood the nature of the charges and potential sentences to which he was pleading guilty.

{¶ 53} Concerning factor 9, the trial court found, and again we agree, that Williams did not have defenses to the crimes, as Williams acknowledged at the plea hearing he was pleading guilty because he was guilty, and in advocating to withdraw his plea, Williams' credibility was an issue, and with respect to his preindictment delay argument, Williams failed to present evidence that he was actually prejudiced by the delay. A review of the record shows that Williams asserted the delay caused him stress and anxiety. However, Williams did not suggest how or if his health conditions impacted his case. Moreover, Williams did not claim that witnesses were no longer available or that evidence was destroyed or could not be obtained due to the delay. Based on the applicable law, Williams' assertion that the preindictment delay caused him stress and anxiety is insufficient to prove actual prejudice. Finally, with respect to Williams' arguments relating to the second stop, the record contains very little evidence regarding

20.

that stop. As such, there is no foundation upon which the trial court, or this court on appeal, could conclude that Williams had a viable suppression issue that would have provided a meritorious defense. We therefore find the trial court did not abuse its discretion in finding that Williams did not establish that he had a complete defense to the crimes.

{¶ 54} Based on the foregoing, we conclude that the trial court did not abuse its discretion when it denied Williams' presentence motion to withdraw plea. Accordingly, we find Williams' first assignment of error not well-taken.

**Second Assignment of Error**

{¶ 55} Williams argues that at the plea hearing, he pled guilty to one count of attempted aggravated possession of drugs, a second-degree felony, and one count of trafficking in marijuana, a fourth-degree felony, but the judgment entry reflects that he was sentenced to a third-degree felony, and the judgment entry controls. He cites *State v. Miller*, 2010-Ohio-5705, ¶12, in support. Williams contends this is a clerical error, but it is not obviously clerical. Williams requests that this court fix the error by ordering the judgment entry to be modified.

{¶ 56} In reply, the State agrees that the judgment entry mistakenly references the trafficking in marijuana count as a third-degree felony, rather than a fourth-degree felony. The State submits this is a clerical error which can be corrected through a nunc pro tunc order. The State relies on *State v. Neumann-Boles*, 2013-Ohio-3968 (9th Dist.), where the defendant, at the sentencing hearing, was sentenced to a felony of the third degree, but

21.

the sentencing entry set forth she was convicted of a second-degree felony. *Id.* at ¶ 4. The appellate court found that the trial court had jurisdiction to correct the typographical error in the sentencing entry via a nunc pro tunc entry with respect to the degree of the felony. *Id.* at ¶ 9-10.

### Law and Analysis

{¶ 57} Nunc pro tunc entries are used to correct clerical mistakes. *State v. Thompson,* 2024-Ohio-991, ¶ 13 (6th Dist.). Clerical mistakes include typographical errors which may arise from oversight or omission, are mechanical in nature and are apparent on the record. *Id.* Clerical mistakes do not involve legal decisions or judgment. *Id.*

{¶ 58} A nunc pro tunc entry can be used to correct a judgment entry to reflect the sentence which the trial court actually imposed on a defendant at sentencing. *State v. Cox,* 2025-Ohio-307, ¶ 15 (6th Dist.). Moreover, pursuant to Crim.R. 36, a trial court has the discretion to make corrections to clerical errors at any time.

{¶ 59} Upon review of the record and the applicable law, we find the inconsistency between the statement made at the sentencing hearing and the judgment entry as to the degree of felony of the trafficking in marijuana count is an error that is merely clerical and can be corrected by a nunc pro tunc entry. As such, we remand this matter for the trial court to issue a nunc pro tunc entry which conforms with the sentence imposed upon Williams at the sentencing hearing. Accordingly, we find Williams' second assignment of error well-taken.

22.

## Conclusion

**{¶ 60}** The judgment of the Erie County Common Pleas Court is affirmed, in part, and this matter is remanded to the trial court for the limited purpose of issuing a nunc pro tunc entry that accurately reflects the statements made at the sentencing hearing.

**{¶ 61}** Pursuant to App.R. 24, the parties are hereby ordered to split the costs incurred on appeal.

Judgment affirmed, in part
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Myron C. Duhart, J.

Charles E. Sulek,J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

23.