[Cite as *State v. Gill*, 2025-Ohio-5300.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio                                    Court of Appeals No. WM-24-022

      Appellee                                Trial Court No.  24 CR 108

v.

Daniel Gill                                      **DECISION AND JUDGMENT**

      Appellant                               Decided: November 25, 2025

* * * * *

Katherine Zartman, Williams County Prosecuting Attorney, and
Emil Gravelle, III, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant Daniel Gill appeals the judgment of the Williams County Court of Common Pleas, which convicted him following his guilty plea to one count of rape of a minor and one count of gross sexual imposition.  For the reasons that follow, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} On August 20, 2024, the Williams County Grand Jury indicted Gill on 25 counts of rape of a minor in violation of R.C. 2907.02(A)(1)(b) and (B), felonies of the first degree; two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4) and (C)(2), felonies of the third degree; and one count of importuning in violation of R.C. 2907.07(A) and (G)(2), a felony of the third degree. All of the counts of rape and gross sexual imposition included a specification under R.C. 2941.148(A) that Gill is a sexually violent predator.

{¶ 3} At Gill's initial appearance, the trial court informed him of the charges against him and the potential penalties, which for the 25 counts of rape consisted of life in prison without the possibility of parole. Gill later pleaded not guilty to the offenses and the matter proceeded towards trial.

{¶ 4} On September 16, 2024, the trial court held a pretrial hearing at which the parties indicated the potential for a plea agreement. The matter was rescheduled for another pretrial hearing on October 22, 2024. At the October 22, 2024 hearing, defense counsel informed the court that the State had recently provided an additional plea offer that he would like to discuss with Gill. The trial court then continued the matter until November 12, 2024.

{¶ 5} At the November 12, 2024 hearing, Gill appeared by video conference. The State informed the trial court that the parties had reached a plea agreement under which Gill would withdraw his plea of not guilty, and enter a plea of guilty to one count of rape in violation of R.C. 2907.02(A)(1)(b) and (B), a felony of the first degree, with a

2.

sexually violent predator specification pursuant to R.C. 2941.148(A). He also agreed to plead guilty to one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) and (C)(2), a felony of the third degree. Notably, the two counts related to two separate victims. In exchange, the State would dismiss the remaining counts and specifications at sentencing.

{¶ 6} Prior to engaging in a Crim.R. 11 plea colloquy, the trial court obtained defense counsel's express consent to receive the guilty plea with Gill appearing by video:

> THE COURT: All right. Mr. Cook, do you and your client consent to me accepting these guilty pleas and the admission to the spec in Count One with your client appearing by video?
>
> MR. COOK: Yes, Your Honor, we would consent.

The trial court then asked Gill if he heard everything that has been presented to the court and if that was his understanding of how things would proceed that day, to which Gill replied "Yes."

{¶ 7} The trial court's plea colloquy was thorough. Relevant here, the trial court asked Gill:

> THE COURT: Has anyone forced you to decide to enter these guilty pleas to these two charges?
>
> MR. GILL: Nope.
>
> THE COURT: Are you entering these pleas of your own free will?
>
> MR. GILL: Yep.
>
> THE COURT: Has anyone promised you a specific sentence or a specific result to convince you to enter these guilty pleas today?

3.

MR. GILL:  Nope.

THE COURT:  Now have you had sufficient opportunity to meet with Mr. Cook to discuss all your options in this case?

MR. GILL:  Yes.

THE COURT:  Has Mr. Cook answered all your questions?

MR. GILL:  Yes.

THE COURT:  And are you satisfied with Mr. Cook's services as your attorney in this case?

MR. Gill:  Yes.

{¶ 8} The trial court then informed Gill of the offenses to which he was pleading guilty and the potential penalties.  On three separate occasions, the trial court notified Gill that the mandatory penalty for the offense of rape with the sexually violent predator specification was life in prison without the possibility of parole.  Each time, Gill stated that he understood.

{¶ 9} Finally, the trial court also informed Gill in detail of the rights he was waiving by entering a guilty plea.  Gill stated that he understood each right.  He then assented that he still believed that the guilty pleas were in his best interest and that he was asking the trial court to accept them.

{¶ 10} Following the plea colloquy, the trial court found that Gill's pleas were knowing, intelligent, and voluntary.  It accepted the pleas, found Gill guilty of the two offenses, and continued the matter for sentencing and the preparation of a presentence investigation report.

4.

{¶ 11} Before the sentencing hearing, Gill moved to withdraw his guilty plea. His written motion stated, "After reflection of this matter, Defendant finds it in his best interest to move forward with a Jury Trial." The State opposed the motion to withdraw, arguing that it merely reflected Gill's "change of heart," which it argued was not a legitimate reason to withdraw the plea.

{¶ 12} The trial court held a hearing on the motion on December 4, 2024. Gill again appeared by video conference. At the hearing, defense counsel stated that during a meeting with Gill after the change of plea hearing, Gill expressed that he was uncomfortable with the plea deal and the circumstances of his entering the plea. Specifically, Gill felt that he was rushed and pushed into it, and he "didn't feel entirely positive that he understood everything." Gill then spoke on his own behalf. He stated,

> Well after everything, I, when we were having a little talk, I had, I told him what do I have to lose? I didn't agree or disagree to any of the most, the plea deal. So I, like he said, I was getting rushed and everything. And everything was going too fast for me. So, I didn't agree for any plea deal or nothing. I didn't have time to think about it. Like this is my life on the hands. I'm doing, I won't be away from my parents for too long. So I want to go to trial so I want to see if I can get a shot to get something down.
>
> . . .
>
> I, everything was going was too fast for me. It was hard to understand what was going on.

Having heard the arguments from the parties, the trial court then replayed the recording from the change of plea hearing. Specific arrangements were made so that Gill could hear the recording at the same time.

5.

{¶ 13} After playing the recording, and upon consideration of the parties' arguments, the trial court found that "the only reason you are requesting withdrawal of your plea is you've changed your mind and that's not a sufficient basis." The trial court, therefore, denied Gill's motion to withdraw his guilty plea.

{¶ 14} Sentencing was held on December 11, 2024. At the sentencing hearing, the trial court imposed the mandatory sentence of life in prison without the possibility of parole on the count of rape. For the count of gross sexual imposition, the trial court ordered Gill to serve 54 months in prison. The trial court further ordered the two sentences to be served consecutively, finding that "consecutive sentences are necessary to punish you and to protect the public, that the crimes that you committed and the harm you have caused are, is so great or serious that a single term does not adequately reflect the seriousness of your offenses." Notably, regarding the findings for consecutive sentences, the subsequent judgment entry of conviction stated:

> Pursuant to R.C. 2929.14(C)(4), the Court finds that consecutive sentences are necessary to protect the public from future crime and to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and that the offenses were committed as part of a course of conduct and the harm caused by the offenses was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct.

## II. Assignments of Error

{¶ 15} Gill timely appeals his conviction, asserting three assignments of error for review:

> 1. The trial court abused its discretion when it overruled Gill's motion to withdraw his guilty plea.

2. The trial court's failure to comply with Crim.R. 43 or obtain Gill's waiver of in-person appearance is a violation of his Sixth Amendment right and made his plea not knowingly, intelligently, or voluntarily given.

3. The trial court failed to consider all three R.C. 2929.14 factors before imposing consecutive sentences.

### III. Analysis

{¶ 16} In his first assignment of error, Gill argues that the trial court abused its discretion when it denied his presentence motion to withdraw his guilty plea.

{¶ 17} "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph two of the syllabus; *State v. Williams*, 2025-Ohio-4352, ¶ 43 (6th Dist.). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 18} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The rule distinguishes between presentence and postsentence motions to withdraw guilty pleas. Presentence motions to withdraw a guilty plea, like the one here, "should be freely and liberally granted." *Xie* at 527. "Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing." *Id.* "Therefore, the trial court must conduct a

7.

hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.*

{¶ 19} In considering whether to grant a presentence motion to withdraw a plea, Ohio courts consider nine factors:

> (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge.

*State v. Warren*, 2024-Ohio-1072, ¶ 24 (6th Dist.), quoting *State v. Dellinger*, 2002-Ohio-4652, ¶ 18 (6th Dist.); *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist. 1995).

{¶ 20} "These factors are part of a balancing test, and no one factor is conclusive." *Id.* at ¶ 25. "[T]he ultimate question to be answered by the trial court is 'whether there is a reasonable and legitimate basis for the withdrawal of the plea,' . . . and the ultimate question to be answered by the court of appeals is whether the trial court abused its discretion in making this determination." *Id.*, quoting *State v. Hartman*, 2018-Ohio-4452, ¶ 14 (6th Dist.).

{¶ 21} Considering these factors, the trial court's decision to deny Gill's motion to withdraw his guilty plea was not unreasonable, arbitrary, or unconscionable.

{¶ 22} First, although Gill argues there is no prejudice to the State, the State retorts that it is prejudiced where it has to reinstate a case that it believed was resolved

8.

and where it has to convince witnesses to testify for a second time. *See State v. Williams*, 2016-Ohio-4905, ¶ 18 (6th Dist.).

{¶ 23} Second, Gill was afforded competent representation throughout the proceedings. He argues, however, that because he attended the plea hearing remotely, he did not have adequate access to his attorney at critical times to discuss any questions or concerns. But the record does not contain any instances where Gill expressed that he had a question or concern.

{¶ 24} Third, the Crim.R. 11 plea hearing and colloquy was thorough. And although Gill appeared by video, there is no indication in the record of any communication issues or times where Gill did not understand what was happening.

{¶ 25} Fourth, the trial court held a hearing on the motion to withdraw at which it heard from defense counsel, Gill, and the State, and afforded each party a full opportunity to make their arguments.

{¶ 26} Fifth, the trial court gave full and fair consideration to the motion. In addition to receiving the parties' arguments, the trial court replayed the recording from the plea hearing to aid in its determination.

{¶ 27} Sixth, the timing of the motion, which was made approximately two weeks after the plea hearing, was reasonable.

{¶ 28} Seventh, Gill's reasoning for the motion, that he felt rushed and "pushed into it," lacks persuasiveness where the plea negotiations occurred over a two-month timespan and where he also described his reason for wanting to withdraw his guilty plea as "what do I have to lose?" Instead, the record supports the trial court's conclusion that

9.

Gill was simply motivated by a "change of heart." This court has consistently recognized that "[a] mere change of heart is not a sufficient reason to permit withdrawal of a plea." *State v. Gross*, 2022-Ohio-2434, ¶ 9 (6th Dist.); *see, e.g., State v. Acosta*, 2016-Ohio-5698, ¶ 18 (6th Dist.); *State v. Williams*, 2016-Ohio-4905, ¶ 13 (6th Dist.).

{¶ 29} Eighth, the record clearly shows that Gill understood the nature of the charges and the potential penalties he was facing. At the plea hearing alone, the trial court stated to him three different times that he was facing a mandatory sentence of life in prison without the possibility of parole.

{¶ 30} Finally, ninth, there is nothing in the record demonstrating that Gill was perhaps not guilty or had a complete defense to the charges. Gill likewise has made no such claim in either his motion to withdraw his guilty plea or on appeal.

{¶ 31} In sum, Gill was represented by counsel throughout the proceedings, he entered a plea following months of negotiations, he clearly conveyed his understanding of the consequences of the plea and his desire for the trial court to accept it only to have a change of heart later, the trial court conducted a full hearing on the motion to withdraw the guilty plea, and fully considered the arguments of the parties and the record of the plea hearing. Under these facts, the trial court's decision to deny Gill's presentence motion to withdraw his guilty plea is not an abuse of discretion.

{¶ 32} Accordingly, Gill's first assignment of error is not well-taken.

{¶ 33} In his second assignment of error, Gill argues that the trial court did not comply with Crim.R. 43 when Gill appeared remotely at the change of plea hearing.

10.

**{¶ 34}** At the outset, Gill recognizes that he did not object to his remote appearance and, therefore, has waived all but plain error. *See State v. Howard*, 2012-Ohio-4747, ¶ 7 (2d Dist.); *State v. Ahreshien*, 2021-Ohio-1223, ¶ 20-21 (6th Dist.). Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To demonstrate plain error, Gill must show "that an error occurred, that the error was obvious, and that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome . . ." *State v. Echols*, 2024-Ohio-5088, ¶ 50, citing *State v. Knuff*, 2024-Ohio-902, ¶ 117. "Plain error should be noticed only 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Clayton*, 62 Ohio St.2d 45, 47 (1980), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶ 35}** Crim.R. 43(A)(1) provides that a defendant "must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules." Notwithstanding this, however, Crim.R. 43(A)(2) provides,

> [T]he court may permit the remote presence and participation of a defendant if all of the following apply:
> (a) The court gives appropriate notice to all the parties;
> (b) The video arrangements allow the defendant to hear and see the proceeding;
> (c) The video arrangements allow the defendant to speak, and to be seen and heard by the court and all parties;
> (d) The court makes provision to allow for private communication between the defendant and counsel. The court shall inform the defendant on the record how to, at any time, communicate privately with counsel. Counsel shall be afforded the opportunity to speak to defendant privately.

11.

Counsel shall be permitted to appear with defendant at the remote location if requested.

(e) The proceeding my involve sworn testimony that is subject to cross examination, if counsel is present, participates, and consents.

Further, Crim.R. 43(A)(3) states that "A court may conduct a trial by jury, a trial to the court, a sentencing proceeding or other substantive proceeding with a defendant appearing remotely if the defendant has waived in writing or orally on the record the right to be physically present and agreed to appear by remote presence in accordance with division (A)(2) of this rule subject to the approval of the court."

{¶ 36} "An accused has a fundamental right to be present at all critical stages of his criminal trial." *State v. Hale*, 2008-Ohio-3426, ¶ 100. But "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, *and to that extent only*." (Emphasis sic.) *Id.*, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107-108 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1, 17 (1964). "Thus, while an accused has a constitutional right to be present at all critical stages, an accused's absence does not necessarily result in prejudicial or constitutional error." *Ahreshien* at ¶ 23.

{¶ 37} In this case, Gill argues that the trial court did not comply with Crim.R. 43 because it did not seek a waiver of his presence at the plea hearing and because it failed to inform Gill on the record how to privately communicate with defense counsel in accordance with Crim.R. 43(A)(2)(d). Notably, contrary to Gill's assertion, the trial court expressly received defense counsel's consent to proceed with the change of plea hearing with Gill appearing remotely:

12.

THE COURT: All right. Mr. Cook, do you and your client consent to me accepting these guilty pleas and the admission to the spec in Count One with your client appearing by video?

MR. COOK: Yes, Your Honor, we would consent.

Gill is correct, however, that the trial court did not inform him about how he could speak with counsel, but this error does not rise to the level of plain error because the record does not demonstrate any prejudice.

{¶ 38} On that issue, Gill contends that he was prejudiced because he felt rushed during the plea hearing and did not understand everything that was happening and therefore his plea was not knowing, intelligent, and voluntary. As evidence of this, he states that when the trial court advised him that he would be giving up his right to a trial, he responded only "Mmm, okay." He claims that the trial court "failed to follow up to see if [he] properly heard what was being explained to him." The full exchange, however, belies his claim:

THE COURT: Do you understand that by entering these guilty pleas today and the admission to specification in Count One, this represents a complete admission of all the facts and allegations contained in those two counts and as a result of your guilty pleas today, there will be no trial. Do you understand that?

MR. GILL: Mmm, okay.

THE COURT: Is that a yes?

MR. GILL: Yes.

{¶ 39} Furthermore, nothing in the record suggests that there were any communication issues or that Gill did not understand any part of the plea hearing. His answers were clear, direct, and responsive to the trial court's questions. He confirmed

13.

that he was entering his guilty pleas of his own free will, that he had sufficient time to speak with his attorney, that his attorney answered all of his questions, and that he was satisfied with his attorney's advice. As such, the record supports the trial court's finding that his plea was knowing, intelligent, and voluntary.

{¶ 40} In addition, there is no evidence that had the trial court informed Gill how to speak privately with counsel, or had Gill been physically present, the result of the plea hearing would have been different. Gill did not express any reservation during the plea hearing, he never asked a question or stated that he needed to speak with counsel, and even in his motion to withdraw his guilty plea he did not claim confusion or a misunderstanding as to the effect of the plea. Instead, he claimed that he felt rushed and pushed into accepting the plea, but it is pure conjecture to believe that he would not have similarly felt "rushed" or "pushed into" accepting the plea had he been physically present or told how to speak privately with counsel. Simply put, the misgivings that Gill had towards his plea deal arose from the deal itself, not from his remote appearance.

{¶ 41} Considering the foregoing, this is not the exceptional case where plain error must be recognized to correct a manifest miscarriage of justice. Accordingly, Gill's second assignment of error is not well-taken.

{¶ 42} In his third and final assignment of error, Gill argues that the trial court erred when it imposed consecutive sentences.

{¶ 43} Felony sentences are reviewed pursuant to R.C. 2953.08(G)(2), which provides, in pertinent part,

14.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 44} When imposing consecutive sentences on a defendant, pursuant to R.C. 2929.14(C)(4) the trial court must make three findings: (1) that consecutive sentences are necessary to protect the public or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) that one of the conditions in R.C. 2929.14(C)(4)(a)-(c) applies. *State v. Beasley*, 2018-Ohio-493, ¶ 252; *State v. Sprague*, 2023-Ohio-4343, ¶ 17 (6th Dist.).

Though "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, . . . it has no obligation to state reasons to support its findings. Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry."

*State v. Jones*, 2024-Ohio-1083, ¶ 11, quoting *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. "[T]he trend appears to be that appellate courts 'have been fairly deferential to the trial court when reviewing the transcript of a sentencing hearing to determine whether the trial court has made the findings required by R.C. 2929.14(C)(4) . . ..'" *State v. Johnson*,

15.

2021-Ohio-2254, ¶ 13 (6th Dist.), quoting *State v. Elmore*, 2016-Ohio-890, ¶ 48 (7th Dist.), quoting *State v. Hargrove*, 2015-Ohio-3125, ¶ 19 (10th Dist.).

{¶ 45} Here, Gill concedes that the trial court made all of the required findings in its sentencing entry. He also concedes that "the trial court made the first two findings required by R.C. 2929.14(C)(4)" at the sentencing hearing. He thus limits his argument to his contention that the trial court failed to make a finding at the sentencing hearing that one of the conditions in R.C. 2929.14(C)(4)(a)-(c) applies.

{¶ 46} The State, in response, argues that the trial court made the finding under R.C. 2929.14(C)(4)(b) that "At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." It points out that the trial court recognized the repeated, continued criminal conduct against the two minor victims and how Gill did not fully appreciate the harm that he caused them and their family. Further, the trial court stated at the sentencing hearing that "the crimes you committed and the harm you have caused are, is so great or serious that a single term does not adequately reflect the seriousness of your offenses."

{¶ 47} From the record of the sentencing hearing, this court cannot clearly and convincingly find that the trial court did not make the required finding under R.C. 2929.14(C)(4)(b). Although it did not parrot the words of the statute, the trial court considered Gill's course of conduct and his multiple offenses and dutifully found that the

16.

harm was so great or serious that a single prison term did not adequately reflect the seriousness of his offenses. The trial court's imposition of consecutive sentences, therefore, was not contrary to law.

{¶ 48} Accordingly, Gill's third assignment of error is not well-taken.

### IV. Conclusion

{¶ 49} For the foregoing reasons, the judgment of the Williams County Court of Common Pleas is affirmed. Gill is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.
_____
JUDGE

Myron C. Duhart, J.
_____
JUDGE

Charles E. Sulek, P.J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.