[Cite as *State v. Fisher*, 2025-Ohio-5821.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                         Court of Appeals No. L-24-1287

      Appellee

                                Trial Court No. CR0202302742

v.

Jquan K. Fisher                                       **DECISION AND JUDGMENT**

      Appellant                              Decided: December 30, 2025

* * * * *

Julia R. Bates, Prosecuting Attorney, and
Randy L. Meyer, Assistant Prosecuting Attorney, for appellee

Henry Schaefer, for appellant

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant Jquan Fisher appeals the judgment of the Lucas County Court of Common Pleas, which convicted him following a plea of guilty to one count of menacing by stalking and one count of violating a protection order. Fisher argues that the trial

court abused its discretion when it denied his presentence motion to withdraw his guilty plea. For the following reasons, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} In the fall of 2023, Fisher was subject to a civil protection order which stated,

> Respondent shall stay away from petitioner and all other protective persons named in this order and shall not be present within 500 feet. . . .
>
> . . .
>
> Respondent shall not initiate or have any contact with the protected persons named in this order or their residences, businesses, places of employment, schools, daycare centers . . ..[1]

{¶ 3} Unrelated to the present charges, but relevant by way of background, the State alleged that on September 9, 2023, a police report was filed when Fisher purportedly assaulted a 13-year-old family member. The family declined to press charges because Fisher was going through mental health issues. Then, on October 14, 2023, Fisher called the police stating that he was being assaulted by someone, but he was not sure if that person was real. It was apparent to the police that Fisher was in a mental health crisis and seeing hallucinations. The police arrested him on a warrant that he had pending in Toledo Municipal Court for a menacing by stalking charge involving the same victim as in this case. Fisher posted bond on October 26, 2023, and was released. He was ordered to have no contact with the victim.

---

[1] The civil protection order is not included in the record. Defense counsel read the relevant portions quoted above to the trial court at the hearing on the motion to withdraw the guilty plea.

2.

{¶ 4}  Four days later, Fisher "liked" one of the victim's Facebook posts.  The next day, Fisher changed his appearance by shaving his head and face.  He was caught on the campus of the University of Toledo, where the victim worked.

{¶ 5}  On November 9, 2023, the Lucas County Grand Jury returned a three-count indictment charging Fisher with one count of menacing by stalking in violation of R.C. 2903.211(A)(1) and (B)(2)(g), a felony of the fourth degree; one count of menacing by stalking in violation of R.C. 2903.211(A)(1) and (B)(2)(c), a felony of the fourth degree; and one count of violating a protection order in violation of R.C. 2919.27(A)(1) and (B)(4), a felony of the third degree.

{¶ 6}  At the arraignment, the trial court ordered a competency evaluation.  At the competency hearing on December 11, 2023, the trial court found Fisher incompetent to stand trial based on the report from the licensed psychologist.  Fisher disagreed with the conclusions of the psychologist and believed that he was competent.  He requested a second evaluation, which also found that he was incompetent to stand trial.  Both examiners concluded that Fisher could become competent with an appropriate course of treatment.

{¶ 7}  On June 27, 2024, the trial court held a third competency hearing at which it determined that Fisher was now competent to stand trial.  Fisher concurred in the findings of the examiner and the trial court.

{¶ 8}  Eventually, on September 30, 2024, Fisher entered into a plea agreement with the State whereby he agreed to plead guilty to the count of menacing by stalking in violation of R.C. 2903.211(A)(1) and (B)(2)(c), and to the count of violating a protection

3.

order.  In exchange, the State agreed to dismiss the count of menacing by stalking in violation of R.C. 2903.211(A)(1) and (B)(2)(g).

{¶ 9}   The trial court conducted a compliant Crim.R. 11 plea colloquy during which Fisher acknowledged that he was pleading guilty because he committed the criminal conduct.  The trial court accepted his pleas, found him guilty, and continued the matter for the preparation of a presentence investigation report.

{¶ 10} A few days before the sentencing hearing scheduled for October 15, 2024, Fisher sent a letter to the trial court requesting to withdraw his guilty plea.  At the sentencing hearing, defense counsel reiterated Fisher's request.  When asked what the basis for the motion to withdraw was, Counsel stated,

> The basis is, Your Honor, what he had pled guilty to he believes are technical violations of a civil protection order that is vague, ambiguous and potentially provable (sic) at trial, that the offense for which he is charged, the State would not be able to meet its burden of proof beyond a reasonable doubt and that's why he had a change of heart.

The trial court continued the matter to give the State an opportunity to respond.  The State filed an opposition to Fisher's motion to withdraw his guilty plea, arguing that his change of heart was insufficient justification to withdraw the plea.

{¶ 11} The trial court held hearings on October 28 and 31, 2024, on Fisher's motion to withdraw his guilty plea.  On October 28, 2024, the trial court received more information on the nature of the offenses.  The State asserted that the count of menacing by stalking to which Fisher pleaded guilty was premised on his conduct of entering the grounds of the University of Toledo, where the victim worked, in violation of the civil protection order.  Defense counsel explained that Fisher was on campus grounds heading

4.

towards the university library, and there was no information that Fisher had any purpose to go to the campus for any reason involving the victim. The trial court also heard a statement from the victim regarding the impact Fisher's conduct has had on her. In addition to describing "the trauma, fear, and devastation" she has experienced, she stated,

> He's not only contacted me, he's contacted my mother, who's present. He's contacted my friends. I have police reports where -- four or five, I think, where I've explained all of them, and I have screenshots that I've given to my attorney showing him every time he has contacted me since May 1st of last year, where it has been multiple engagements. Then on top of that, he found my work email and he contacted that telling me to come to him.
>
> . . .
>
> And when he showed up to my job, his appearance was different from the pictures that they showed me where he had proven he had been arrested for the protection order, and what he looked like the day he was arrested were not the same.
>
> . . .
>
> He shaved all of his facial hair, all the top of his hair, so I wouldn't have recognized him initially. I had to stare for a second. I was like, oh, my God, I think that's him. I was unaware of that, and I was like I thought we just handled this.

{¶ 12} On October 31, 2024, the trial court held a formal hearing on the motion to withdraw the guilty plea. It expressly considered several factors to determine whether the motion should be granted.

{¶ 13} First, the trial court recognized that Fisher was represented by highly competent counsel, a point on which the State agreed.

{¶ 14} Second, the trial court found that Fisher was afforded a complete Crim.R. 11 plea colloquy before entering his plea. Defense counsel noted that there had been

5.

issues involving Fisher's competency earlier in the proceedings, but the trial court found that he had been restored to competency. Further, it stated that nothing in Fisher's demeanor at the change of plea hearing caused it to question his understanding of what was transpiring.

{¶ 15} Third, it found that Fisher's motion was made within a reasonable time.

{¶ 16} Fourth, the trial court found that the reason for Fisher's motion was that he believed he did not commit the offenses even though he pled guilty. Fisher was adamant that the civil protection order only said that he could not be within 500 feet of the victim. He did not agree that it also said that he could not have any contact with the victim's place of employment. Notably, in the presentence investigation report, Fisher admitted that he had not read the specific language that was contained in the civil protection order, and he also admitted that he did violate the protection order.

{¶ 17} Fifth, the trial court found that Fisher understood the nature of the charges against him and the potential penalties, a fact which was confirmed by defense counsel's statement that Fisher understood the charges, the facts, and the penalties. Defense counsel explained that he went over all the evidence—including the video evidence, police reports, and text messages—with Fisher before he entered his guilty pleas.

{¶ 18} Sixth, the trial court found that Fisher does not have a complete defense to the charges. In so finding, the trial court relied on its review of the original civil protection order and the video of Fisher being on the grounds of the University of Toledo.

6.

{¶ 19} Finally, the trial court considered whether the State would be prejudiced by the withdrawal of the plea. The State offered that it would be prejudiced "only in the impact on the victim."

{¶ 20} Following its examination of the factors, the trial court denied Fisher's motion to withdraw his guilty plea. It further commented on the change in Fisher's demeanor from the plea hearing to the hearings on the motion to withdraw his guilty plea. Fisher admitted that he has been refusing to take his medication because it makes his muscles ache and his body shake. The trial court surmised that the change in demeanor "may well be because of the issue of lack of medication." It re-referred Fisher to Northwest Ohio Psychiatric Hospital for another competency assessment.

{¶ 21} At the sentencing hearing held two weeks later, the trial court stated,

> [Fisher] had made a motion to withdraw his former plea of guilty, the Court denied it, finding that he just had a change of heart. The Court had referred him to NOPH because of the Court's view that his no longer being willing to take prescribed medication could be impacting his view on his present circumstances.
>
> In discussions with staff at NOPH indicating that any engagement with him would be temporary in terms of their inability to manage his daily willingness to take his medication long-term. That doesn't mean the person involved will take them.
>
> As such, I've brought him back before the Court. The Court feels it appropriate to now go forward with sentencing.

After hearing from the parties, including the victim, the trial court placed Fisher on community control for a period of five years, with the first six months to be spent at the Correctional Treatment Facility. The trial court further notified him that if he violated the terms of community control he could be sentenced to consecutive prison terms of 18

months on the count of menacing by stalking and 36 months on the count of violation of a civil protection order.

## II. Assignment of Error

{¶ 22} Fisher timely appeals his judgment of conviction, asserting one assignment of error for review:

> 1. The trial court abused its discretion by denying Appellant Jquan Fisher's pre-sentence motion to withdraw his guilty plea under Ohio Criminal Rule 32.1, as the motion was timely, supported by specific reasons demonstrating a viable defense, and did not prejudice the State, thereby violating Mr. Fisher's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

## III. Analysis

{¶ 23} In his assignment of error, Fisher argues that the trial court abused its discretion when it denied his presentence motion to withdraw his guilty plea.

{¶ 24} "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph two of the syllabus; *State v. Williams*, 2025-Ohio-4352, ¶ 43 (6th Dist.). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 25} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The rule distinguishes between presentence and postsentence motions to withdraw guilty pleas. Presentence motions to withdraw a guilty

8.

plea, like the one here, "should be freely and liberally granted." *Xie* at ¶ 527.

"Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing." *Id.* "Therefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.*

{¶ 26} In considering whether to grant a presentence motion to withdraw a plea, Ohio courts consider nine factors:

> (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge.

*State v. Warren*, 2024-Ohio-1072, ¶ 24 (6th Dist.), quoting *State v. Dellinger*, 2002-Ohio-4652, ¶ 18 (6th Dist.); *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist. 1995).

{¶ 27} "These factors are part of a balancing test, and no one factor is conclusive." *Id.* at ¶ 25. "[T]he ultimate question to be answered by the trial court is 'whether there is a reasonable and legitimate basis for the withdrawal of the plea,' . . . and the ultimate question to be answered by the court of appeals is whether the trial court abused its discretion in making this determination." *Id.*, quoting *State v. Hartman*, 2018-Ohio-4452, ¶ 14 (6th Dist.).

{¶ 28} Here, Fisher contends that the trial court abused its discretion because he timely filed his motion, supported by the specific reason that he believed he had a viable

9.

defense, and because the State would not be prejudiced by withdrawing the plea and going to trial.

{¶ 29} Considering these factors, the trial court's decision to deny Fisher's motion to withdraw his guilty plea was not unreasonable, arbitrary, or unconscionable.

{¶ 30} First, the State acknowledged at the hearing that it was prejudiced "only in the impact on the victim." Notably, the victim in this case frequently appeared at the many hearings. Without discounting the emotional toll continued proceedings would have on her, there is nothing in the record to suggest that she would be unwilling or unavailable to testify or that the State would be unable to present its case if the guilty plea was withdrawn and the matter proceeded to trial. *Compare with State v. Williams*, 2016-Ohio-4905, ¶ 18 (6th Dist.) (State prejudiced by having to convince an accomplice to testify for a second time after the accomplice had already been sentenced and there was no longer leverage the State could use to compel him to testify).

{¶ 31} Second, it is undisputed that defense counsel provided Fisher competent representation throughout the proceedings.

{¶ 32} Third, the Crim.R. 11 plea hearing and colloquy was thorough.

{¶ 33} Fourth, the trial court held two hearings related to the motion to withdraw at which it heard from defense counsel, Fisher, the State, and the victim, and afforded each party a full opportunity to make their arguments.

{¶ 34} Fifth, the trial court gave full and fair consideration to the motion. It considered each of the factors in detail, engaging with the parties regarding each one.

10.

{¶ 35} Sixth, the timing of the motion, which was made within two weeks of the plea hearing, was reasonable.

{¶ 36} The seventh and ninth factors are related in this case because Fisher's stated reasoning for his motion was that he believed he had a viable defense to the charges. The trial court found that he did not. This court agrees.

{¶ 37} Fisher argued below that he did not violate the civil protection order because he was not within 500 feet of the victim. The civil protection order, however, contains an additional clause that Fisher was not to initiate or have any contact with the victim's place of employment, which he violated.

{¶ 38} On appeal, he now argues that because he did not read the civil protection order, he could not have recklessly violated it as is required for an offense under R.C. 2919.27(A)(1). Pursuant to R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." Here, Fisher had just been released five days earlier on bond from a separate charge of menacing by stalking against the same victim. He knew that he was subject to a civil protection order. He knew that he was to have no contact with the victim. And despite his assertion otherwise, he knew that she worked at the University of Toledo because he obtained her work e-mail address and contacted her at that address. His decision, therefore, to not read the civil protection order and to go to her place of employment demonstrates a heedless indifference to the consequences, thereby

11.

undermining his claim of a viable defense to the charge of violating a civil protection order.

{¶ 39} Similarly, Fisher argues that he did not have the mens rea of knowingly required in the menacing by stalking statute, which states "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person . . . or cause mental distress to the other person . . .. R.C. 2903.211(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). He contends that his conduct of liking the victim's Facebook post and his presence on campus were not part of a pattern of conduct. The victim, however, detailed his additional conduct. According to her, he has contacted her multiple times, he has contacted her mother and friends, he obtained and contacted her through her work e-mail address, and he has done this despite the civil protection order. Further, days after being released on bond for a similar offense against her, he "liked" the victim's Facebook post, changed his appearance, and went to her place of employment. Considering this history, Fisher's claim that he was going to the campus for an unrelated reason rings hollow. The trial court's conclusion that Fisher did not have a viable defense is reasonable.

{¶ 40} Finally, regarding the eighth factor, the record demonstrates that Fisher understood the nature of the charges and the potential penalties he was facing. The trial court explained those to him at the change of plea hearing. Further, defense counsel agreed that Fisher understood the nature of the charges and the potential penalties,

12.

informing the trial court that he reviewed all the evidence with Fisher, including the video, police reports, and text messages.

{¶ 41} Fisher contends on appeal that there is a question regarding his understanding given his prior mental health issues and period of incompetency. But he was found to be competent before the plea hearing and the trial court did not notice, nor does the record disclose, any behavior that would indicate he was no longer competent at the plea hearing.

{¶ 42} In sum, Fisher was provided with skilled counsel throughout the proceedings, he understood the nature of the charges and the potential penalties he was facing, he was well-informed of the evidence against him, and he admitted his guilt to the trial court and in the presentence investigation report. When Fisher moved to withdraw his guilty plea, the trial court conducted a thorough hearing on the matter and fully considered the arguments of the parties and the record of the proceedings. The trial court then determined that Fisher did not have a viable defense to the charges. It further determined that his motion to withdraw his guilty plea was merely a result of his change of heart, possibly caused by his refusal to take his medication. The record supports these conclusions. This court has consistently recognized that "[a] mere change of heart is not a sufficient reason to permit withdrawal of a plea." *State v. Gross*, 2022-Ohio-2434, ¶ 9 (6th Dist.); *see, e.g., State v. Acosta*, 2016-Ohio-5698, ¶ 18 (6th Dist.); *State v. Williams*, 2016-Ohio-4905, ¶ 13 (6th Dist.). Accordingly, under these facts, the trial court's decision to deny Fisher's presentence motion to withdraw his guilty plea is not an abuse of discretion.

13.

**{¶ 43}** Fisher's assignment of error is not well-taken.

## IV. Conclusion

**{¶ 44}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Fisher is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik
_____                          _____
                                                                        JUDGE

Gene A. Zmuda
_____                          _____
                                                                        JUDGE

Charles E. Sulek
_____                          _____
CONCUR.                                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.